Awilda MORALES, et al.,
Plaintiffs, Appellees,

v.

Sylvia O. RAMIREZ, et al.,
Defendants, Appellants.

Nos. 89–1909, 89–2066.

United States Court of Appeals,
First Circuit.

Heard May 9, 1990.
Argued June 29, 1990.

John S. Koppel, Atty., Appellate Section, Civil Div., Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., Daniel F. Lopez–Romo, U.S. Atty., and Barbara L. Herwig, Atty., Civil Div., Dept. of Justice were on brief, for defendants, appellants.

John M. Garcia, with whom Garcia & Fernandez, San Juan, P.R., was on brief, for plaintiffs, appellees.

Before SELYA and CYR, Circuit Judges, and ROSENN *, Senior Circuit Judge.

SELYA, Circuit Judge.

Seeking money damages (but not reinstatement), Awilda Morales, appellee before us, sued several federal functionaries in the district court.[1] Her original salmagundi of claims was gradually winnowed as

---

* Of the Third Circuit, sitting by designation.

1. The four federal defendants, and the positions held by them, are identified and described *infra.* The defendants' conjugal partnerships were also sued. By the same token, Morales' husband, Eric Vega Ramos, joined Morales as a named plaintiff. Because the presence of spousal parties is immaterial to the issues before us, we treat Morales as if she were the sole plaintiff and likewise ignore the references to defendants' conjugal partnerships.

time went by and rulings intervened. We see no point in looking backward, but concentrate instead on what survives: Morales' claim that defendants, in their individual capacities, violated her rights under the Due Process Clause by maliciously causing her to be prosecuted on unfounded criminal charges.

After some earlier skirmishing not now relevant, the court below denied defendants' request for summary judgment in respect to this cause of action, ruling that defendants were not shielded by qualified immunity. *Morales v. Ramirez*, Civ. No. 87–1416 (D.P.R. July 11, 1989). These interlocutory appeals followed. *See Mitchell v. Forsyth*, 472 U.S. 511, 524–30, 105 S.Ct. 2806, 2814–17, 86 L.Ed.2d 411 (1985) (immediate appeal lies from denial of government official's pretrial motion for summary judgment based on qualified immunity defense).

## I

On a *Mitchell*-type intermediate appeal, customary summary judgment rules prevail. *See Amsden v. Moran*, 904 F.2d 748 (1st Cir.1990); *Unwin v. Campbell*, 863 F.2d 124, 132 (1st Cir.1988). Hence, appellate review of the district court's order is plenary. *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990). Like the court below, "we are obliged to examine the properly documented portions of the record and draw all reasonable inferences therefrom in the light most hospitable to the party opposing the motion." *Amsden*, at 752. We must affirm the refusal to terminate the case unless we conclude that "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c).

Consonant with the foregoing, we limn the facts in the manner required by the liturgy of Rule 56 and thereafter proceed with our analysis of the legal issues involved.

## II

For slightly over three years, plaintiff toiled as a secretary to Ronaldo Sanabria, director of the Caribbean Area Office of the United States Department of Labor (DOL). In November 1983, Morales received a promotion to become a wage-and-hours compliance officer. She began as a trainee under the direct supervision of defendant Sylvia O. Ramirez. Ramirez remained her immediate superior at all times material hereto.

In early 1985, based largely on the perceived similarity of different signatures, Ramirez began to voice suspicions that Morales had falsified documents and forged signatures. Ramirez saw to it that Morales' impending promotion was sidetracked. She also consulted defendant Jorge Concepcion, a special agent of the federal Office of Inspector General (OIG). Concepcion started a preliminary investigation, first attempting to verify the authenticity of the questioned signatures. After discovering that one of the signatures was bogus, Concepcion advised Ramirez to inform the hierarchs at DOL.

Contrary to standard protocol and for reasons best known to herself, Ramirez chose to leapfrog over Sanabria (her immediate superior and a person thought to be favorably disposed toward Morales). Instead, she contacted DOL's assistant regional administrator, defendant Anthony J. Ponturiero. Ramirez gave Ponturiero certain materials to review, including plaintiff's case diary sheets and three investigative files which she (Ramirez) had compiled. Ponturiero detected certain irregularities. He concluded that Morales had forged the signature of at least one employee on an interview statement and had submitted travel vouchers which did not correspond to the peregrinations reported in her case diary sheets. Ponturiero ascertained that, in an apparent coverup, some of Morales' sheets had been edited to show that she had conducted interviews telephonically rather than in person (as originally asserted). He also discovered that someone had substituted new, unsigned statements for two of the "signed" statements which had come under scrutiny.

In July 1985, Ponturiero informed Ramirez about his findings and notified her

that he had turned the matter over to OIG for a more detailed probe. Concepcion resumed the paper chase. In October, he interviewed Morales, formally apprising her of the inquest and warning her of her rights in respect to possible criminal proceedings. When confronted with the claimed irregularities, Morales admitted discrepancies (including forging an employee's signature on an interview record), but passed them off as inadvertent errors committed, for the most part, in reliance upon what she had learned from DOL colleagues. Concepcion's analysis of the travel documents told him a different tale, revealing to his satisfaction that Morales, *inter alia*, had sought reimbursement for trips never taken. And when Concepcion broached the discrepancy between unsigned and signed statements in Morales' work files, she asserted her Fifth Amendment right to remain silent.

OIG gave Concepcion's final report (dated January 9, 1986) to the United States Attorney for the District of Puerto Rico to determine whether criminal prosecution was warranted. In providing a list of witnesses to the prosecutor, Concepcion omitted Sanabria's name. The omission was hurtful to plaintiff inasmuch as Sanabria's testimony would have been strongly supportive of her. Without talking to Sanabria, the United States Attorney chose to present the case to a grand jury. A nine-count indictment was handed up, charging Morales with falsification of federal documents and making materially untrue statements for financial gain in violation of 18 U.S.C. §§ 287, 1001, 1341, 2071(b).

In May 1986, plaintiff resigned. In October 1986, the criminal case was tried. After both sides rested, the district court, relying heavily on Sanabria's testimony, granted Morales' motion for judgment of acquittal under Fed.R.Crim.P. 29. This civil action ensued.

### III

Plaintiff's one remaining cause of action is, in her words, "a constitutional tort claim for egregious malicious prosecution." Appellee's Brief at 3. As such, it is brought under the imprimatur of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The Court has described *Bivens* as generally "establish[ing] that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." *Carlson v. Green*, 446 U.S. 14, 18, 100 S.Ct. 1468, 1471, 64 L.Ed.2d 15 (1980).

We digress to note, and thereafter to skirt, a singular complication affecting *Bivens* actions in the federal workplace. Many federal workers, like plaintiff, come within the ambit of the Civil Service Reform Act of 1978 (CSRA), Pub.L. No. 95–454, 92 Stat. 1111 (1978) (codified in various sections of 5 U.S.C.). It is not precisely settled whether CSRA—which comprises an "integrated scheme of administrative and judicial review," *United States v. Fausto*, 484 U.S. 439, 108 S.Ct. 668, 672, 98 L.Ed.2d 830 (1988)—prevents a former federal worker from maintaining a *Bivens* action for malicious prosecution. On a preliminary motion, the district court declined to dismiss Morales' suit, finding no preclusion. *Morales v. Ramirez*, Civ. No. 87–1416 (D.P.R. July 20, 1988). The question is not free from doubt. *Cf., e.g., Bush v. Lucas*, 462 U.S. 367, 380–90, 103 S.Ct. 2404, 2412–17, 76 L.Ed.2d 648 (1983) (CSRA held to bar *Bivens* claim for abridgement of plaintiff's First Amendment rights); *Stephens v. Coleman*, 901 F.2d 1571, 1575–76, (11th Cir.1990) (CSRA held to preclude plaintiff's *Bivens* claims for due process infractions); *Lombardi v. SBA*, 889 F.2d 959, 961 (10th Cir.1989) (similar to, and following, *Bush v. Lucas*); *Berrios v. Dept. of the Army*, 884 F.2d 28, 31–33 (1st Cir.1989) (CSRA held to preempt plaintiff's defamation suit against former supervisors).

That intricate legal riddles spark judicial interest is not enough to justify a court in volunteering solutions. Because the CSRA issue is not squarely before us, *see, e.g., Domegan v. Fair*, 859 F.2d 1059, 1061–62 (1st Cir.1988) (*Mitchell*–type interlocutory

appeal requires only that court review denial of qualified immunity); *Goyco de Maldonado v. Rivera*, 849 F.2d 683, 684 (1st Cir.1988) (similar),[2] and because the instant appeals are resolvable on alternate grounds, we take no view of this issue. Rather, we assume *arguendo* that plaintiff's putative cause of action escapes CSRA preclusion. On this assumption, we turn to appellants' other arguments.

## IV

■ Qualified immunity operates to shield government officials exercising discretionary powers "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The normative standard is objective and independent of the merit of the underlying constitutional claim:

> Because qualified immunity does not address the substantive viability of [the asserted] claim, but rather the objective reasonableness of a defendant's actions, a plaintiff who is entitled to prevail on the merits is not necessarily entitled to

prevail on the issue of qualified immunity.

*Collins v. Marina–Martinez*, 894 F.2d 474, 478 (1st Cir.1990). The flip side of the *Collins* coin, however, is that a defendant who is entitled to prevail on the underlying issue is necessarily entitled to prevail on the issue of qualified immunity.

■ We see no point in tiptoeing too timidly through the qualified immunity thicket. We have recognized before that, in certain cases, some aspect of the merits may be "inexorably intertwined" with the issue of qualified immunity. *Unwin*, 863 F.2d at 133 n. 9. This is such a case. Even assuming for the sake of discussion that the right elucidated in *Torres v. Superintendent of Police*, 893 F.2d 404, 409 (1st Cir.1990) (explicitly recognizing existence of specific constitutional tort for malicious prosecution) was "clearly established" in the operative time frame (1984–1986),[3] our consideration here of whether "a reasonable official would [have] underst[oo]d that what he is doing violates" that right, *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987), unavoidably calls into question whether *any* violation of the right occurred. Accordingly, we review the merits of the

---

**2.** In appropriate qualified immunity cases, some circuits have exercised a species of pendent appellate jurisdiction over matters beyond those bound up in the qualified immunity inquiry. *See Hill v. Department of the Air Force*, 884 F.2d 1318, 1320 (10th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990); *Carlson v. Conklin*, 813 F.2d 769, 770–71 (6th Cir.1987); *see also* 15 C. Wright, A. Miller, and C. Cooper, *Federal Practice and Procedure* § 3914.20, at 387–88 (Supp.1990) (approving practice). We have not gone so far, although we have indicated that where defendants have a winning position on the merits, and the merits are sufficiently imbricated with qualified immunity, an appellate court may review the merits to the extent that the merits and the qualified immunity defense overlap. *See Unwin*, 863 F.2d at 133 n. 9.

The *Unwin* approach stops somewhat short of endorsing a "pendent appellate jurisdiction" approach. We do not propose to address today the contours of the latter doctrine. It is perfectly obvious that if pendent appellate jurisdiction is available at all—a matter on which we intimate no view—the doctrine's use is discretionary. We see nothing in this case which would

dispose us to employ such discretion and reach out, gratuitously, for the CSRA issue. We do, however, exercise the narrower prerogative reserved by *Unwin* and review directly the issue underlying, and interwoven with, appellants' qualified immunity defense. *See infra*.

**3.** We note in passing that, in the mid–1980s, there was some doubt as to the availability of a constitutional remedy for malicious prosecution. *See, e.g., Landrigan v. City of Warwick*, 628 F.2d 736, 746 (1st Cir.1980) ("Whether the filing of the allegedly baseless charge is ... actionable under section 1983 we prefer not to decide now."); *cf. Cloutier v. Epping*, 714 F.2d 1184, 1190 (1st Cir.1983) (in the civil context, malicious institution of suit, without more, does not transgress federally protected rights). Even where the constitutional right to be free from malicious prosecution was accepted, certitude was lacking as to the dimensions of the right. *See, e.g., Wheeler v. Cosden Oil and Chem. Co.*, 734 F.2d 254, 257–60 & n. 14 (5th Cir.1984) (discussing uncertainty as to whether, and when, claims of prosecution without probable cause might be maintained under 42 U.S.C. § 1983).

question directly, applying Rule 56 criteria, to determine whether plaintiff has made out a claim of constitutional breach at all. *See Unwin*, 863 F.2d at 133 n. 9.

In a case like this one, the complainant is obliged to show "that the [defendants'] malicious conduct was so egregious that it violated substantive or procedural due process rights...." *Torres*, 893 F.2d at 409. Disregarding the distinctions between procedural and substantive due process, *see, e.g., Amsden*, at 753–54 (essaying comparison), Morales mixes and matches the concepts, never taking a clear-cut stand as to which brand of due process she invokes. Although the procedural/substantive dichotomy is often significant, we are satisfied that the characterization is immaterial to the resolution of these appeals. While the methodology employed in handling Morales' case was no textbook model, we cannot say it encroached upon federally guaranteed due process rights, substantive or procedural.[4]

■ There is a categorical difference between tort claims for malicious prosecution and constitutional claims arising on the same terrain. Malicious prosecution does not *per se* abridge rights secured by the Constitution. *Torres*, 893 F.2d at 409; *cf. Baker v. McCollan*, 443 U.S. 137, 145, 99 S.Ct. 2689, 2694, 61 L.Ed.2d 433 (1979) ("The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released."). It follows that to invoke the Due Process Clause, the complainant must do more than prove in common-law terms that she was harassed and

prosecuted in bad faith and without probable cause by government officials acting under color of their authority. The "more" comprises an ability to show that defendants' conduct was "so egregious as to subject the individual to a deprivation of constitutional dimension." *Torres*, 893 F.2d at 409; *accord Coogan v. City of Wixom*, 820 F.2d 170, 175 (6th Cir.1987). In other words, the challenged behavior, before becoming constitutionally actionable, must, substantively, "shock the conscience," *Barnier v. Szentmiklosi*, 810 F.2d 594, 599 (6th Cir.1987), or, procedurally, "deprive[ ] plaintiff of liberty by distortion and corruption of the processes of law," *Torres*, 893 F.2d at 410.

■ At this juncture, we summarize the accusations which plaintiff has levelled against each defendant as to his or her role in the institution of the unsuccessful criminal proceedings. We keep in mind plaintiff's blanket allegation that Ramirez was motivated by longstanding personal animosity toward her and that Concepcion, at least, shared that hostility to some degree. We also bear in mind plaintiff's documented assertion that other compliance officers who had experienced trouble with diary sheets and travel vouchers were dealt with intradepartmentally, not criminally.

1. *Ramirez.* Plaintiff argues that Ramirez never trained her in how to prepare travel vouchers and interview forms; assigned her too many cases; approved incorrect travel vouchers without instructing Morales to revise them; took the problem directly to Ponturiero, circumventing Sanabria; pressed to resolve matters criminal-

---

4. In her brief, plaintiff collects and summarizes her grievances as follows:

> The criminal action was initiated and instigated by defendants; the criminal action terminated in favor of plaintiff Morales; defendants' malice is evident; defendants acted jointly to deprive plaintiff Morales of her liberty, purposely ignoring exculpatory sources of evidence, distorting and falsifying facts and distorting and corrupting the administrative process with the bad faith intention of having her indicted; defendants acted without probable cause....

Appellee's Brief at 12–13. This characterization tends more toward the substantive, especially

since plaintiff has not argued, either below or on appeal, that her rights were jeopardized by the scantiness of available post-deprivation remediation. *Cf. Torres*, 893 F.2d at 411. Given plaintiff's framing of the issues, we take no view of the adequacy or inadequacy of other remedies. *See Clauson v. Smith*, 823 F.2d 660, 666 (1st Cir.1987) (arguments not made below cannot ordinarily be raised for the first time on appeal); *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.) (issues not briefed are waived), *cert. denied,* —— U.S. ——, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990).

ly rather than administratively; and disregarded plaintiff's side of the story altogether.

2. *Ponturiero.* Plaintiff states the totality of her claim against this defendant as follows: "Ponturiero was the assistant area director [sic] and, instead of evaluating the matter objectively, he ... bypassed Sanabria and communicated and acted together with Ramirez and referred the matter for a criminal investigation." Appellee's Brief at 6.

3. *Concepcion.* Plaintiff says that the OIG agent conducted a "biased and improper investigation," purposely neglected to identify Sanabria as a potential witness, "distorted the facts," "omitted vital information," and converted the investigation into a criminal one for no good reason. *Id.* at 7.

4. *Del Rio.* The fourth defendant, Socorro Del Rio, is mentioned only once in plaintiff's brief on appeal, which recounts that Del Rio joined Concepcion and Ramirez "in conducting a search through all the files of the matters that had been handled by plaintiff Morales." *Id.* While Del Rio was the woman who replaced plaintiff and received the promotion which she was denied, we can ascertain no real basis for her inclusion in what plaintiff visualizes as a cabal.[5]

We think this evidentiary summary brings into sharp relief the weakness in plaintiff's constitutional case. Del Rio was involved only in a routine records search. Ponturiero (who had every reason to suspect that something was amiss) merely directed that an investigation take place. He then sent the investigative file to the United States Attorney. The accusations against Concepcion are mainly pejorative in nature. The exceptions, such as his failure to include Sanabria on the witness list, hardly rank as outrageous. Ramirez's course of conduct, while more sustained, does not differ materially in kind and degree from that attributed to her codefendants.

In our judgment, this evidence is not "significantly probative," *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986), of a constitutional deprivation. Giving Morales the benefit of the doubt, she has shown that the material proffered was incomplete and compiled with a view toward placing her in a poor light; that defendants drew (and encouraged others to draw) erroneous inferences from it; that defendants' motives were impure; and that defendants improvidently involved the United States Attorney. In constitutional terms, that was not enough. While there may conceivably be cases in which the withholding of information, or its arrangement in a misleading pattern, becomes so egregious as to work a deprivation of constitutional dimension, there is nothing about defendants' omissions in the instant case which goes so gratingly against the grain as to implicate due process concerns. *Cf., e.g., Coogan,* 820 F.2d at 174–75 (no constitutional cause of action for malicious prosecution where defendants' slanted investigation led to warrant and plaintiff's arrest); *Barnier,* 810 F.2d at 595–96, 599 (no constitutional cause of action for malicious prosecution where defendants filed allegedly misleading police report, producing criminal complaint against plaintiffs); *Johnson v. Barker,* 799 F.2d 1396, 1400 (9th Cir.1986) (no constitutional cause of action for malicious prosecution where defendants caused two separate filings of criminal charges, refused to drop baseless charges for "political" reasons, and misrepresented available testimony).

Overall, plaintiff has not demonstrated that knowingly false or fraudulent information was presented to the prosecutor.[6]

---

**5.** In earlier (unverified) pleadings, plaintiff ruminated that she had been told by some unidentified person that Del Rio provided damaging information to Ramirez and believed that Del Rio resented Morales' initial selection for the promotion. Hearsay and speculation of this ilk are, of course, impuissant in the face of a properly documented Rule 56 motion. *See Garside,* 895 F.2d at 50 ("Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment.") (collecting cases); *see also* Fed.R.Civ.P. 56(e).

**6.** To be sure, Morales alleges in conclusory fashion that defendants were "falsifying facts." *See*

*Cf., e.g., White v. Frank,* 855 F.2d 956, 956–57, 962 (2d Cir.1988) (valid constitutional claim for malicious prosecution stated where defendants intentionally gave false testimony before grand jury); *Wheeler v. Cosden Oil and Chem. Co.,* 734 F.2d 254, 260 (5th Cir.1984) ("maliciously tendering false information to the prosecutor" can serve as basis for § 1983 action). Similarly, plaintiff has failed to demonstrate that she was incarcerated, physically abused, deprived of her liberty, or punished on account of some specially protected characteristic, say, ethnicity or gender. *Cf., e.g., Usher v. City of Los Angeles,* 828 F.2d 556, 562 (9th Cir.1987) (averments that defendants, *inter alia,* contrived charges, submitted false police reports, made racial slurs, handcuffed plaintiff, and held him, manacled, for several hours at police station without access to sanitary facilities said to state constitutional claim for malicious prosecution); *Dunn v. Tennessee,* 697 F.2d 121, 125–26 (6th Cir.1982) (allegations that defendants, *inter alia,* arrested plaintiff on trumped-up charges, booked and imprisoned him, requiring bail to be posted, said to state constitutional claim for malicious prosecution), *cert. denied,* 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983). And, while plaintiff has alleged in conclusory fashion that the factfinding process was "distort[ed] and corrupt[ed]," *see supra* note 4, such generalities do not enhance the force—or lack of force—of her proffer. *See, e.g., Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990) ("summary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations").

To be sure, it was unusual for the defendants to have foregone an administrative solution. That others were not prosecuted for similar irregularities might perhaps indicate hostility, but we believe a referral to the United States Attorney, without considerably more, is as a matter of law inadequate to sustain a claim of constitutional

breach. The further allegation that defendants "conspired" is sheer persiflage, adding nothing to the equation. *See Johnson,* 799 F.2d at 1400 (to be federally cognizable, claimed conspiracy to prosecute on questionable charges requires demonstration that plaintiff was deprived of liberty "unconstitutionally ... or by the distortion and corruption of the processes of law"); *see also Brennan v. Hendrigan,* 888 F.2d 189, 195 (1st Cir.1989) (conspiracy, to be actionable under § 1983, requires plaintiff to prove not only the defendants' agreement, but also an actual deprivation of a constitutionally secured right); *Landrigan v. City of Warwick,* 628 F.2d 736, 742 (1st Cir.1980) (same). On this record, the very worst that can be said is that defendants, or some of them, instigated the criminal prosecution manipulatively, based on a slanted investigation and without probable cause. Proof of those elements would likely suffice in a tort action under local law, *see, e.g.,* P.R. Laws Ann. tit. 31, § 5141; *Ayala v. Sons of Puerto Rico, Inc.,* 103 D.P.R. 778 (1975), but the composite—although not to be condoned—falls short of possessing "the depth of imbrutage" necessary to sustain a finding that federal rights were transgressed. *Amsden,* at 758.

## V

We need go no further. If defendants' behavior was as plaintiff claims, it was reproachable—but not within the narrow margins of plaintiff's federally assured right to be free from malicious prosecution. Abusive though they may have been, the acts and omissions complained of were neither conscience-shocking nor so egregious as to violate due process. Were defendants' conduct presented as a matter to be resolved on the merits, plaintiff's burden would be to make out "a deprivation of constitutional magnitude." *Torres,* 893 F.2d at 409. Since Morales failed to carry this burden, it necessarily follows that she could not carry the still greater burden of

*supra* note 4. But she identifies no particular fabrication. It is a settled principle of Rule 56 jurisprudence that, where a nonmovant bears the burden of proof, she can defeat summary judgment only if she can "reliably demonstrate that *specific facts* sufficient to create an authentic dispute exist." *Garside,* 895 F.2d at 48 (emphasis supplied); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–26, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986).

blunting appellants' qualified immunity defense. Hence, the district court erred in refusing to grant defendants' motion for summary judgment based on qualified immunity.

*Reversed.*