**Dennis W. RICCI, Plaintiff, Appellee,**

v.

**Captain Michael URSO, et al., Defendants, Appellants.**

**No. 91–2067.**

United States Court of Appeals, First Circuit.

Heard April 8, 1992.

Decided Aug. 31, 1992.

Robert F. Botvin, Sp. Asst. Atty. Gen., with whom James E. O'Neil, Atty. Gen., was on brief, for defendants, appellants.

Amato A. DeLuca with whom Elizabeth McDonough Noonan and Mandell, Good-

man, DeLuca & Schwartz, Ltd. were on brief, for plaintiff, appellee.

Before BREYER, Chief Judge, CYR and STAHL, Circuit Judges.

BREYER, Chief Judge.

Dennis Ricci brought this civil rights action against three Rhode Island police officers who, he says, arrested him without "probable cause." U.S. Const. amend. IV; 42 U.S.C. § 1983. The officers moved for summary judgment on qualified immunity grounds. *See Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The district court denied their motion, and the defendants now appeal. *See Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985) (interlocutory appeal available where "qualified immunity" denied).

We agree with the district court that the record in this case, without further elaboration, does not show that the defendants are entitled to "qualified immunity" as a matter of law. Consequently, we affirm the district court's decision.

## I

### Background

The record shows the following undisputed facts:

1. In late 1986 Rhode Island police officers obtained an order permitting them to intercept telephone calls at the home of Richard Zanfanga, a suspected gambler.

2. The wiretaps revealed numerous calls from illegal bettors, including many such calls from a man named "Dennis."

3. In January 1987, after obtaining a search warrant, the police found gambling records, betting slips and a Rolodex-type address directory in Zanfanga's home.

4. The rolodex contained one, and only one, entry for a person called "Den-nis," along with an address and phone number. The police found that the address and phone number were those of Dennis Ricci, the plaintiff.

5. Detective LaCross (a defendant) then telephoned Dennis Ricci and spoke to him for "less than 60 seconds." He made a tape of that conversation on a hand-held tape-recorder. He then compared this tape with earlier taped recordings of phone calls to Zanfanga by the bettor "Dennis." He concluded that the two voices were similar and that Ricci therefore made the incriminating calls.

6. Detective Scuncio (another defendant) then applied for an arrest warrant for Ricci. Scuncio filed an affidavit stating that the police had "intercepted" Ricci "conducting illegal gambling business" with Zanfanga.

7. After obtaining an arrest warrant, police officers arrested Ricci, took him to police headquarters, and detained him for a few hours. Ultimately, a state judge dismissed all charges pending against Ricci.

8. The police, in the ordinary course of business, re-used the tape of the La-Cross/Ricci call for other purposes. Thus, the Ricci voice can no longer be recognized.

In their motion for summary judgment, defendants contend that, as a matter of law, these facts make out the defense of "qualified immunity." The district court disagreed, and, given the present state of the record, we must accept that determination.

## II

### The Legal Issue

The legal standard that the defendants must meet to obtain "qualified immunity" protection is not demanding. Defendants are not required to show that they had "probable cause" to arrest the plaintiff. Rather, they must show only that they had "objectively reasonable" grounds for obtaining an arrest warrant—that a

reasonably competent police officer could have believed that probable cause existed to arrest Ricci. *Malley,* 475 U.S. at 341, 106 S.Ct. at 1096 ("[Officers] will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue...."). The Supreme Court has pointed out that "even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Hunter v. Bryant,* —— U.S. ——, ——, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991) (per curiam) (quoting *Anderson,* 483 U.S. at 641, 107 S.Ct. at 3039). The standard "gives ample room for mistaken judgments." *Malley,* 475 U.S. at 343, 106 S.Ct. at 1097. And, it is met "so long as the presence of probable cause is at least arguable." *Prokey v. Watkins,* 942 F.2d 67, 72 (1st Cir.1991); *Floyd v. Farrell,* 765 F.2d 1, 5 (1st Cir. 1985).

■ Despite the generosity of this standard, however, the defendant officers have yet to satisfy it. In effect, defendants point only to two facts, which, they say, offered them an objectively reasonable basis for believing that "probable cause" existed. The first is the fact that the police found a rolodex in Zanfanga's home with Dennis Ricci's name and address in it. It is not surprising, however, to find an address directory at a person's residence. Indeed, people often keep in their homes the names and addresses of friends, family, acquaintances, business associates, and others. The record evidence reveals nothing special about the rolodex at issue. It says nothing about whether the rolodex contained a high proportion of gamblers' names, nor does it say exactly where the police found the directory. Thus, we must assume, favorably to the plaintiff, simply that Zanfanga had a card in his home with the name and address of "Dennis Ricci." We do not see how such evidence alone could permit a reasonable belief that Dennis Ricci was the gambler "Dennis," for the name "Dennis" is not an unusual one. *Cf. Tillman v. Coley,* 886 F.2d 317 (11th Cir.1989) (agent's report of drug purchase from a 24 year-old named Mary Tillman, does not permit a

sheriff to arrest a 42 year-old Mary Tillman who lived near the place where the agent bought drugs).

The second, and only other, piece of evidence is the fact that Detective LaCross made a tape of Dennis Ricci's voice and compared it with the voice of the gambler "Dennis." Contrary to plaintiff's argument on appeal, a voice comparison can provide a perfectly proper basis for establishing a person's identity. We recognize people by voice (including telephone voice), as well as by sight. Here, however, the record evidence tends to undercut the validity of the voice comparison. It shows that Detective LaCross did not have expert training in voice identification, that the tape of Dennis Ricci's voice was made on a hand-held tape recorder, and that the entire conversation lasted *less than sixty seconds.* Moreover, the defendants have failed to offer any evidence that might counteract the inference of unreliability raised by these facts. While the record indicates that Detective LaCross made other voice comparisons during the Zanfanga investigation, defendants provide no details about these other tests, nor do they describe their relevance to LaCross' analysis of Dennis Ricci's voice. On the evidence before us, therefore, the voice analysis appears no more reliable than the identification of a suspect from a brief visual glimpse.

■ Given these concerns about the defendant's evidentiary support, we cannot say, on the record before us, that the defendants have demonstrated the reasonableness of their belief in probable cause. Of course, the defendant officers remain free to pursue the matter of qualified immunity in subsequent proceedings. A denial of summary judgment is not a grant of summary judgment on that issue for the other side. *See, e.g., Prokey v. Watkins,* 942 F.2d 67, 73–74 (1st Cir.1991); *Feliciano–Angulo v. Rivera–Cruz,* 858 F.2d 40, 48 (1st Cir.1988) ("We emphasize, of course, that while we uphold the denial of qualified immunity at this stage in the proceedings, this does not prevent the qualified immunity defense from being further

considered … when the record is more complete."). Defendants may provide evidence about the location or contents of the rolodex that might indicate that the directory served a gambling, rather than a social, purpose. Or, Detective LaCross might testify further about the circumstances of the voice comparison and why he concluded that "Dennis" and "Dennis Ricci" were the same person. The district court may consider such additional information in reviewing subsequent motions for qualified immunity, keeping in mind that the issue of qualified immunity should ordinarily be resolved, whenever possible, by the district court. *See Hunter,* — U.S. at —, 112 S.Ct. at 537 ("Immunity ordinarily should be decided by the court long before trial."); *Anderson,* 483 U.S. at 646 n. 6, 107 S.Ct. at 3042 n. 6 ("[Q]ualified immunity questions should be resolved at the earliest possible stage of a litigation.").

As we have said, however, on the record in its present state, the district court lawfully denied the motion for summary judgment. Its decision is

*Affirmed.*

STAHL, Circuit Judge (concurring).

I concur simply to state that I do not read this opinion as holding that a plaintiff is never entitled to summary judgment on the question of liability in a § 1983 action. Indeed, I believe that if plaintiff were to make a timely motion for partial summary judgment on the question of liability, and if defendants were to produce no further probative evidence supporting their entitlement to qualified immunity, then, on this record, plaintiff would be entitled to have his motion granted.