Mutter v. SalemUNITED STATES DISTRICT COURT FOR THE 11/14/96 P

DISTRICT OF NEW HAMPSHIRE


Carl Mutter

    v.                                     Civil No. 94-299-SD

Town of Salem;
James Ross, individually and in his
 official capacity as Police Chief for the
 Town of Salem, New Hampshire;
Fred A. Rheault, Jr., individually and in
 his official capacity as an Officer of the
 Salem Police Department;
Mark Cavanaugh, individually and in his
 official capacity as an Officer of the
 Salem Police Department


O R D E R


In this civil rights action, plaintiff Carl Mutter brings various claims arising out of his arrest and prosecution for felonious sexual assault. The complaint brings claims pursuant to 42 U.S.C. § 1983, as well as state law.

Presently before the court is defendants' motion for summary judgment, in which all the named defendants have moved for summary judgment on essentially two grounds: (1) Mutter's arrest was based on probable cause; and (2) assuming, arguendo, that probable cause was absent, defendants are entitled to qualified immunity. Plaintiff objects. As explained below, all defendants

are entitled to summary judgment in their favor.

Background

In 1990, a fifteen year-old girl (J.K.) told her boyfriend that at various times between the ages of five and ten she was forced to engage in sexual acts with three adult males, including plaintiff Mutter, her next-door neighbor.  See Exhibits G and H (attached to motion for summary judgment).  J.K.'s boyfriend related the information to J.K.'s brother and then to her mother, who notified the Raymond Police Department.  As the alleged offenses had occurred in Salem, the matter was referred to the Salem Police Department, which responded by initiating an investigation.

Detective Fred Rheault, Jr., investigated the complaint in consultation with his colleague, Detective Mark Cavanaugh.  On August 20, 1990, Rheault and Cavanaugh took a report from J.K.'s mother, who relayed what her daughter had told her about the assaults.  See Defendants' Exhibit C.  Cavanaugh then conducted a videotaped interview with J.K., in which J.K. claimed Mutter had sexually assaulted her multiple times over a period of approximately one year when she was seven or eight years old, sometime after her stepfather had allegedly raped her.  During the interview, J.K. described several sexual acts that were

2

allegedly perpetrated upon her by Mutter, her stepfather, and a third unknown male. J.K. also stated that Mutter was in a wheelchair at the time.[1] Defendants' Exhibit G at 9.

During the course of the investigation, the police also received a written statement from J.K.'s boyfriend in which he told the police what J.K. had said to him about the assaults. In addition, the officers visited the neighborhood in which the crimes occurred and interviewed former neighbors of plaintiff.

On August 27, 1990, Officer Rheault prepared an affidavit for Mutter's arrest based on J.K.'s descriptions of the assaults allegedly perpetrated on her by Mutter. Plaintiff's disability was not included in the affidavit. Based on the affidavit, a warrant was issued for Mutter's arrest.

On November 11, 1990, Mutter voluntarily traveled to the Salem police department, where he was read his Miranda rights, arrested on charges of felonious sexual assault, and released on personal recognizance. Mutter was indicted on March 5, 1991, by the Rockingham County grand jury on three counts of sexual

---

As it may be relevant to Mutter's claims, a brief review of additional information regarding Mutter's disability is warranted. In 1951, Mutter sustained serious injuries in an accident that left him wheelchair-bound and in a permanent state of paraplegia. As a result, Mutter suffered from impotency and incontinence, which required his using a condom urinary device. See Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment at 2.

assault, including a charge of forcible penile penetration, which was later dropped.  At trial, he was acquitted by a jury of all charges.


                              Discussion

1.  Summary Judgment Standard

     Summary judgment shall be ordered when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Rule 56(c), Fed. R. Civ. P.  Since the purpose of summary judgment is issue finding, not issue determination, the court's function at this stage "'is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"  Stone & Michaud Ins., Inc. v. Bank Five for Savings, 785 F. Supp. 1065, 1068 (D.N.H. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

     When the non-moving party bears the burden of persuasion at trial, to avoid summary judgment he must make a "showing sufficient to establish the existence of [the] element[s] essential to [his] case."  Celotex Corp. v. Catrett,, 477 U.S. 317, 322-23 (1986).  It is not sufficient to "'rest upon mere allegation[s] or denials of his pleading.'"  LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (quoting Anderson,

                                  4

supra, 477 U.S. at 256), cert. denied, ___ U.S. ___, 114 S. Ct. 1398 (1994). Rather, to establish a trial-worthy issue, there must be enough competent evidence "to enable a finding favorable to the non-moving party." Id. at 842 (citations omitted).

In determining whether summary judgment is appropriate, the court construes the evidence and draws all justifiable inferences in the non-moving party's favor. Anderson, supra, 477 U.S. at 255.

2. Plaintiff's Civil Rights Claims

a. Officers Rheault and Cavanaugh

Plaintiff claims that Officers Rheault and Cavanaugh violated his Fourth Amendment rights[2] because they did not have probable cause to believe he had committed a crime when they applied for a warrant for his arrest on sexual assault charges. The officers raise the defense of qualified immunity, arguing that they reasonably could have believed they had probable cause to arrest.

_____

[2]To the extent the complaint refers to rights secured by other amendments to the Constitution, the court finds plaintiff's claims are more properly brought pursuant to the Fourth Amendment. Cf. Albright v. Oliver, 510 U.S. 266, ___, 114 S. Ct. 807, 813 (1994) (indicating that section 1983 claims arising from alleged unconstitutional arrests are properly brought under the Fourth Amendment, rather than under the rubric of substantive due process recognized by the Fourteenth Amendment).

The doctrine of qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The qualified immunity analysis in this circuit is two-pronged: (1) "the constitutional right asserted by the plaintiff [must be] clearly established at the time of the alleged violation," and (2) "a reasonable official situated in the same circumstances should have understood that the challenged conduct violated that established right." St. Hilaire v. City of Laconia, 71 F.3d 20, 22 (1st Cir. 1995), cert. denied, 116 S. Ct. 2548 (1996). The court should ordinarily decide the question of qualified immunity, particularly where, as here, the relevant facts are undisputed. See id. at 24, 24 n.1; accord Wood v. Clemons, 89 F.3d 922, 927 (1st Cir. 1996).

In order to obtain qualified immunity, a police officer need not show that an arrest was supported by probable cause. See Ricci v. Urso, 974 F.2d 5, 6-7 (1st Cir. 1992). "Rather, [he] must show [he] had objectively reasonable grounds for obtaining an arrest warrant--that a reasonably competent police officer could have believed that probable cause existed to arrest." Id. Probable cause is shown "if 'the facts and circumstances within a

[police officer's] knowledge and of which [the officer] had reasonably trustworthy information [are] sufficient in themselves to warrant a [person] of reasonable caution' to believe that a crime has been committed or is being committed." Alexis v. McDonald's Restaurants of Mass., Inc., 67 F.3d 341, 351 (1st Cir. 1995) (quoting Carroll v. United States, 267 U.S. 132, 162 (1925)).

The doctrine of qualified immunity extends to reasonable, although mistaken, conclusions about the lawfulness of one's conduct. See Lowinger v. Broderick, 50 F.3d 61, 65 (1st Cir. 1995). The doctrine "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Rivera v. Murphy, 979 F.2d 259, 263 (1st Cir. 1992) (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)); cf. Lowinger, supra, 50 F.3d at 65 ("even erroneous decisions by officials may be entitled to qualified immunity"). Therefore, "[a]n officer will be held liable for seeking an arrest warrant later found to be without probable cause only if there *clearly* was no probable cause at the time the warrant was requested." Floyd v. Farrell, 765 F.2d 1, 5 (1st Cir. 1985).

Given the facts and circumstances known to defendants, they reasonably could have believed that probable cause existed when Rheault prepared the application for Mutter's arrest. The

7

application essentially relied on the statements the victim, J.K., made in her videotaped interview. Rheault included a rather detailed description of three types of sexual acts that J.K. claimed Mutter had forced her to perform, including penetrating her vagina with his finger and forcing her to perform fellatio on him. In her interview, J.K. not only described the incidents in detail, but she also identified Mutter by name and described him as a neighbor in the trailer park. In addition, although not included in the application, the officers had taken a signed statement from J.K.'s boyfriend, who said that J.K. had told him that Mutter had slapped her and "raped" her when he babysat her as a child. Rheault also had spoken earlier to J.K.'s mother, who said that J.K. told her that Mutter was one of the men who had previously assaulted her. Finally, Rheault stated in his deposition that after taking J.K.'s statement he visited the trailer park and spoke to Mutter's neighbors, who confirmed that Mutter had previously lived there and had a "physical ailment." Deposition of Fred Rheault at 14-18.

From the court's review of the information available to defendants, it appears to be sufficiently trustworthy so as to support their belief that they had probable cause to arrest Mutter for aggravated felonious sexual assault, as defined by New

8

Hampshire Revised Statutes Annotated (RSA) 632-A:2 (1986).[3]
Accordingly, the court finds that both Rheault and Cavanaugh have qualified immunity because probable cause to arrest was at least arguable.[4]

Mutter makes a series of arguments to support his claim that the police officers do not have qualified immunity. He contends that his arrest lacked probable cause because the police officers placed too much reliance on the victim's statement and did not conduct a sufficient investigation. A similar contention was raised by the plaintiff in <u>Lallemand v. University of Rhode Island</u>, 9 F.3d 214 (1st Cir. 1993). There, in the face of a plaintiff's claim that the police did not conduct a proper investigation before arresting him for rape, the court held that the victim's positive identification of the plaintiff established

---

[3]Under RSA 632-A:2, a person is guilty of the crime of aggravated felonious sexual assault if, inter alia,

> he engages in sexual penetration with another person under any of the following circumstances:
> I. When the actor overcomes the victim through the actual application of physical force, physical violence or superior physical strength.

[4]In so ruling, the court implicitly has drawn plaintiff's "clearly established" right broadly; that is, the court has found that plaintiff's clearly established rights included the right to be free from arrest unless such arrest is supported by probable cause. However, even if the right is drawn more narrowly, defendants are still entitled to qualified immunity.

probable cause for his arrest. Id. at 216. Thus, although plaintiff is correct that a victim's statement does not automatically establish probable cause to arrest, see, e.g., Lewis v. Kendrick, 944 F.2d 949, 952 (1st Cir. 1991); B.C.R. Transp. Co. v. Fontaine, 727 F.2d 7, 10 (1st Cir. 1984), a police officer's reliance on a victim's statement can be enough to establish probable cause, depending on the other facts and circumstances within the knowledge of the police of which they had reasonably trustworthy information. In particular, a police officer may rely on a victim's statement absent "some indication that the information is not reasonably trustworthy or reliable." Clay v. Conlee, 815 F.2d 1164, 1168 (8th Cir. 1987).

In this case, before seeking the arrest warrant, the defendants took a videotaped statement from the victim, in which she described in detail what the plaintiff did to her and identified the plaintiff by name and physical description. There was no evidence that J.K. was "incoherent, irrational, confused, or intoxicated" when she made her statements to the officers. See id. Moreover, J.K. provided a detailed account of the facts and circumstances surrounding what she claimed Mutter had done to her. The defendants also took a written statement from the victim's boyfriend, spoke to the victim's mother, and spoke to the victim's neighbors, who confirmed that Mutter had previously

10

lived in the trailer park and that he was physically disabled. It should be further noted that the alleged crime had occurred many years earlier and there thus was no crime scene to investigate or other witnesses to the event. For all of the above reasons, the level of subsequent investigation was objectively reasonable, and it was objectively reasonable for the police to have relied primarily on the victim's statement. Cf. Franco-de Jerez v. Burgos, 876 F.2d 1038, 1042 (1st Cir. 1989) (immigration inspector had no duty to investigate after a determination of probable cause before testifying at grand jury proceeding).

Mutter also asserts that Officer Rheault "willfully, ignore[d], omit[ted], fabricate[d] and misrepresent[ed] material facts in his investigation report and in his affidavit;" and that the affidavit contained "other information [that] was deliberately distorted so that the affidavit could appear to present sufficient proof that probable cause existed." See Plaintiff's Opposition to Defendant's Motion for Summary Judgment. Particularly, plaintiff contends that Officer Rheault possessed information, undisclosed to the magistrate, which negated probable cause. One of the undisclosed "facts" that the plaintiff points to as known to Rheault is plaintiff's disability and confinement to a wheelchair.

11

When assessing whether a police officer has acted objectively unreasonably in leaving information out of an arrest warrant, the court must assess whether, in light of the material that has been recklessly disregarded, there remains "sufficient content in the warrant affidavit to support a finding of probable cause." Franks v. Delaware, 438 U.S. 154, 171-72 (discussing when a defendant is entitled to an evidentiary hearing to challenge a search warrant); see also Lallemand, supra, 9 F.3d at 215-16.

While Rheault would have been more prudent had he stated in the affidavit that the plaintiff was disabled and confined to a wheelchair, the court cannot find that he acted objectively unreasonably. J.K. named Mutter as one of her attackers, described what particular acts Mutter had allegedly done, and stated that he had been in a wheelchair at the time. The court finds that, on these facts, full disclosure of the plaintiff's disability, as known by Officer Rheault at the time of the affidavit, could still have led a reasonable person to believe that probable cause existed to arrest Mutter.[5] See Lallemand,

_____

[5]Plaintiff further emphasizes that he was incapable of achieving an erection or ejaculating, and one of the charges involved use of his penis. However, as the court noted above, the extent of his disability was unknown to Officer Rheault at the time the affidavit was drafted. Also, plaintiff was charged with committing other sexual acts on J.K., such as digital

supra, 9 F.3d at 215-17 (police officer entitled to qualified immunity where affidavit for arrest warrant in rape case was based on victim's statement and her identification but did not include any statements from other witnesses regarding other possible suspects or that victim was drunk at time alleged rape occurred).

Plaintiff next argues that defendants knowingly falsified and recklessly disregarded material facts when they prepared the warrant application because there were discrepancies between the account given by the victim and the accounts given by the victim's mother and boyfriend as to the victim's prior statements. While such discrepancies may cast doubt on the reliability of the statements of the mother and boyfriend, such is to be expected when a statement is purely hearsay in nature. The discrepancies do not undermine the objective reasonableness of the defendant's decision that J.K. was reasonably reliable, particularly as both individuals confirmed that J.K. had

---

penetration of J.K.'s vagina. Based on J.K.'s statement, and because Mutter was capable of using his hands and other body parts, it would be reasonable for a police officer to believe that probable cause existed to arrest Mutter for sexual assault. See Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994) ("Probable cause need only exist as to any offense that could be charged under the circumstances."); accord Gassner v. City of Garland, 864 F.2d 394, 398 (5th Cir. 1989).

disclosed to them that she had been abused by Mutter.  Although, again, defendants would have demonstrated more prudence had they included the inconsistent statements in the affidavit, inclusion of the discrepancies would not have undercut the existence of probable cause.[6]

Plaintiff also points to statements in the affidavit that the allegations against Mutter came to light after J.K. "received professional counseling for an incident that happened recently." Mutter correctly asserts that this statement is inconsistent with Officer Rheault's investigative report and J.K.'s deposition, both of which stated that the allegations came to light when J.K. attempted her first sexual experience with her boyfriend. However, "[a] factual error in an affidavit that has no material bearing on probable cause does not raise Fourth Amendment concerns." Tomczak v. Town of Barnstable, 901 F. Supp. 397, 400 n.11 (D. Mass. 1995).  When J.K. remembered the assaults is not a material fact as to whether there was probable cause to believe Mutter sexually assaulted J.K.  Therefore, the error regarding

---

[6]Plaintiff also states that Officer Rheault failed to include information in the arrest warrant affidavit about a child support payment dispute between J.K.'s mother and former stepfather.  This argument has no merit.  The omission of this information has no bearing on probable cause with respect to Mutter.

14

J.K.'s counseling session does not undermine probable cause.

Lastly, plaintiff argues that the affidavit contains inconsistencies regarding the time frame when the assaults were allegedly committed by Mutter. Having reviewed the affidavit, the court does not find these inconsistencies to be material.

For the foregoing reasons, the court hereby finds and rules that Officers Rheault and Cavanaugh acted objectively reasonably and are entitled to qualified immunity.

### b. Malicious Prosecution

Mutter claims he was maliciously prosecuted by the defendants in violation of his Fourth Amendment rights.[7] The general elements of malicious prosecution are: (1) defendant commenced or continued a criminal proceeding against plaintiff; (2) the proceedings terminated in the accused's favor; (3) probable cause was absent for the criminal proceeding; and (4) defendant acted with actual malice. See Calero-Colon, supra note 7, 68 F.3d at 3 n.5.

_____

[7]Plaintiff makes clear in his objection that his malicious prosecution claim is brought pursuant to the Fourth Amendment, and not under the Fourteenth Amendment's guarantees of procedural or substantive due process. See Calero-Colon v. Betancourt-Lebron, 68 F.3d 1, 3 n.7 (1st Cir. 1995) (noting that a malicious prosecution claim may be actionable under the Fourth Amendment in a § 1983 action).

In support of his claim that defendant police officers maliciously prosecuted him in violation of the Fourth Amendment, plaintiff asserts that the defendants initiated criminal proceedings against him knowing they lacked probable cause and that they misrepresented material facts in order "to get permission to initiate criminal proceedings against him," meaning (presumably) the application for the arrest warrant. Plaintiff has not submitted evidence that defendants withheld exculpatory evidence from the prosecution after securing the arrest warrant. Plaintiff's theory of malicious prosecution fails for the same reasons his false arrest theory failed: The individual defendants are entitled to qualified immunity in that probable cause for the arrest was at least arguable. Thus, the defendants are entitled to summary judgment on plaintiff's malicious prosecution claims brought under section 1983.

c.  Municipal Liability

Under section 1983, a municipality can be found liable "'only where the municipality itself causes the constitutional violation at issue.'" Collins v. City of Hacker Heights, 503 U.S. 115, 123 (1992) (quoting Canton v. Harris, 489 U.S. 378, 385 (1989)). Liability depends on whether "there is a direct causal link between a municipal policy or custom and the alleged

16

constitutional deprivation." Canton, supra at 385.

Where, as here, a city employee such as a police officer has allegedly violated another's constitutional rights, the city may be liable "if it had a policy or custom of failing to train its employees and that failure to train caused the constitutional violation." Collins, supra at 123. Inadequate training of a police officer is considered the "cause" of a constitutional tort "if--and only if--the failure to train amounted to 'deliberate' indifference to the rights of persons with whom the police come into contact." Id. at 123-24.

In support of his claim that his rights were violated pursuant to a custom or policy of the town of Salem, plaintiff submits evidence to support that the Salem police department had no policy requiring accuracy in police reports and no procedure to reconcile inconsistent reports.[8] Plaintiff's evidence also suggests that defendant James Ross, the police chief, was ignorant of New Hampshire case law requiring that an affidavit in support of an arrest warrant be consistent with the underlying police reports. Plaintiff has submitted no evidence of prior incidents whereby inconsistent police reports led to a

---

[8]The other evidence submitted by Mutter on this issue is irrelevant because the causal link between the conduct and his constitutional deprivation is too attenuated.

17

constitutional violation, nor has he otherwise shown that the existent procedures were inadequate. Instead, plaintiff's evidence supports that the town and its policy makers were, at most, negligent. See Canton, supra, 489 U.S. at 392 ("In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident."); see generally Walker v. City of New York, 974 F.2d 293, 299-300 (2d Cir. 1992) (absent countervailing evidence, city policy makers can reasonably assume that their employees possess common sense and "do not display deliberate indifference by doing so"). Given the absence of evidence of deliberate indifference, both the town and the individual defendants in their official capacities are entitled to summary judgment in their favor.

## Conclusion

For the foregoing reasons, defendants are entitled to summary judgment on all federal claims asserted by plaintiffs. The court declines to exercise its supplemental jurisdiction over the plaintiff's state claims, and those claims are dismissed

without prejudice.  See 28 U.S.C. § 1367(c)(3).  The clerk shall enter judgment in this case.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

November 14, 1996

cc:  Robert E. McDaniel, Esq.
     Andrew L. Isaac, Esq.

19