UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT
 

No. 96-1148

 UNITED STATES,

 Appellee,

 v.

 DAVID P. BIZIER,

 Defendant - Appellant.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MAINE

 [Hon. D. Brock Hornby, U.S. District Judge] 

 

 Before

 Selya and Stahl, Circuit Judges, 

 and Woodlock,* District Judge. 

 

 William Maselli, by appointment of the Court, with whom Law 
Offices of William Maselli was on brief for appellant. 
 Helene Kazanjian, Assistant United States Attorney, with 
whom Jay P. McCloskey, United States Attorney, was on brief for 
appellee.

 

 April 22, 1997
 

  

* Of the District of Massachusetts, sitting by designation.

 WOODLOCK, District Judge. The sole issue in this WOODLOCK, District Judge. 

appeal from a criminal judgment for possession with intent to

distribute cocaine is whether a motion to suppress the subject

cocaine should have been granted when the contraband was seized

in a warrantless body search conducted immediately before the

defendant's formal arrest. We find there was probable cause,

independent of the cocaine seized, to arrest the defendant before

the search. Consequently, we affirm the conviction. 

 I I

 The defendant-appellant David P. Bizier became the

focus of a narcotics investigation after a confidential informant

told Maine Drug Enforcement Administration (MDEA) Agent Joseph

Bradeen that Bizier was selling crack cocaine from his apartment

in Lewiston, Maine. MDEA Agents used the confidential informant

to make two controlled buys of crack cocaine from the apartment

on January 12, 1995 and January 19, 1995. The confidential

informant received a telephone call from Bizier's girlfriend on

January 23, 1995 while Bradeen and other MDEA agents were meeting

in the informant's apartment. Bizier's girlfriend, who had been

observed facilitating entry to Bizier's apartment for one of the

earlier controlled buys, told the informant, who then told the

Agents, that Bizier had gone to Massachusetts in his truck to

pick up some cocaine and would be returning around 6:00 p.m.

Bradeen gave Maine State Police personnel a description of the

 -2-

truck and the timing of its return north; he also told the State

Police to stop the truck.

 Bizier was spotted that day heading north on the Maine

Turnpike going slightly over the speed limit and was stopped by

Maine State Police Troopers Kevin Curran and Charles Granger, at

about 6:00 p.m. The troopers, who had been informed by a State

Police dispatcher that there were narcotics in the truck,

testified it took Bizier an unusually long period to pull over

after being directed to do so by the flashing lights of the

police vehicle. Bizier appeared glassy eyed with pinpoint

pupils. When he got out of the car, he avoided eye contact and

swayed from side to side. He and his passenger told the troopers

conflicting stories about where they had been. Bizier consented

to a search of the vehicle and admitted that there was a small

amount of marijuana in the ashtray of the vehicle. A police dog

brought to the scene alerted to the presence of narcotics in the

front seat. Thirty minutes after the stop, Bizier and his truck

were transported from the breakdown lane to a nearby State Police

facility to secure the truck pending application for a search

warrant regarding the vehicle. After speaking personally to MDEA

Agent Bradeen and receiving advice that there was probable cause

to arrest Bizier for cocaine distribution, Trooper Granger

conducted a body search, to which Bizier objected, during which

two bags of cocaine were found in Bizier's underwear. Bizier was

then formally placed under arrest.

 -3-

 Bizier's motion to suppress the cocaine was denied by

Judge Hornby acting on the Report and Recommendation of

Magistrate Judge Cohen. Bizier then entered a conditional plea

of guilty to a one-count indictment for possession with intent to

distribute the cocaine seized, received a 70-month sentence, and

now appeals the denial of the suppression order.

 II II

 Considering only the evidence available before the

search, it is clear that information known to law enforcement

authorities supported the arrest, an arrest which in turn

supported the body search of Bizier. The information provided

grounds for two distinct species of arrest.

 First, the traffic violation stop generated information

which, standing alone and irrespective of whether there was a

separate law enforcement objective, provided probable cause for

an offense justifying a full custody arrest related to misuse of

the truck by Bizier.

 Second, the past crack cocaine transactions between the

confidential informant and Bizier coupled with the report by his

girlfriend of a trip south to obtain a new supply of the drug,

corroborated by his return north at about the time expected,

provided probable cause for a cocaine distribution arrest.

 Before turning to a specific discussion of the

application of search and seizure law to these circumstances, we

first state the general principles governing this area.

 -4-

 A. A.

 PROBABLE CAUSE FOR ARREST - GENERAL PRINCIPLES PROBABLE CAUSE FOR ARREST - GENERAL PRINCIPLES 

 An officer may conduct a warrantless arrest as long as

there is "probable cause to believe that the suspect has

committed or is committing a crime." United States v. Mart nez- 

Molina, 64 F.3d 719, 726 (1st Cir. 1995) (citing United States v. 

Watson, 423 U.S. 411, 416-18 (1976); Gerstein v. Pugh, 420 U.S. 

103, 113-14 (1975)). The inquiry is "not whether there was a

warrant or whether there was time to get one, but whether there

was probable cause for the arrest." Watson, 423 U.S. at 417. 

 To establish probable cause, the government must

demonstrate that "at the time of the arrest, the facts and

circumstances known to the arresting officers were sufficient to

warrant a prudent person in believing that the defendant had

committed or was committing an offense." United States v. 

Cleveland, 106 F.3d 1056, 1060 (1st Cir. 1997) (citing United 

States v. Torres-Maldonado, 14 F.3d 95, 105 (1st Cir.), cert. 

denied, 115 S. Ct. 193 (1994)); see also Beck v. Ohio, 379 U.S. 

89, 91 (1964). Probable cause is to be determined based on the

"collective knowledge and information of all the officers

involved." United States v. Paradis, 802 F.2d 553, 557 (1st Cir. 

1986) (citing United States v. Rose, 731 F.2d 1337, 1342-43 (8th 

Cir.), cert. denied, 469 U.S. 931 (1984)).  

 To be sure, evidence recovered after an arrest may not

form the basis of probable cause for that arrest. See United 

 -5-

States v. Diallo, 29 F.3d 23, 26 (1st Cir. 1994) (citing Maryland 

v. Garrison, 480 U.S. 79, 85 (1987)); see also Smith v. Ohio, 494 

U.S. 541, 543 (1990) (it is "axiomatic that an incident search

may not precede an arrest and serve as part of its

justification") (quoting Sibron v. New York, 392 U.S. 40, 63 

(1968)). However, whether a formal arrest occurred prior to or

followed "quickly on the heels" of the challenged search does not

affect the validity of the search so long as the probable cause

existed prior to the search. See Rawlings v. Kentucky, 448 U.S. 

98, 111 (1980).

 B. B.

 SEARCH INCIDENT TO ARREST - GENERAL PRINCIPLES SEARCH INCIDENT TO ARREST - GENERAL PRINCIPLES 

 Once authorized to make a lawful arrest, law

enforcement personnel may conduct a warrantless search of the

person of an arrestee. "The justification or reason for the

authority to search incident to a lawful arrest rests [both] on

the need to disarm the suspect in order to take him into custody

[and] on the need to preserve evidence on his person for later

use at trial." Robinson, 414 U.S. at 234. The permissible 

purposes of such a search include not merely the preservation of

evidence generally but also specifically the "seizure of

destructible evidence." United States v. Uricoechea-Casallas, 

946 F.2d 162, 165 (1st Cir. 1991).

 C. C.

 SEARCH AND ARREST OF BIZIER SEARCH AND ARREST OF BIZIER 

 -6-

 Two separate but, here, intertwined sources of

evidence--the information flowing from the traffic stop and the

information flowing from the course of cocaine dealing

arrangements between Bizier and the confidential informant--

supported a search of Bizier incident to his arrest.

 1. Search Flowing From Valid Traffic Violation Stop 1. Search Flowing From Valid Traffic Violation Stop 

 Last term in Whren v. United States, 116 S. Ct. 1769 

(1996), the Supreme Court reaffirmed that so long as officers

have probable cause to believe a traffic violation has occurred,

it is reasonable for them to stop an automobile and temporarily

detain the driver. Id. at 1772; see also Maryland v. Wilson, 117 

S. Ct. 882, 886 (1997) (officer making traffic stop may order

passengers out of car pending completion of stop). The

information developed in connection with that temporary

investigative stop may in turn provide grounds for a full custody

arrest. In Whren, a police officer observed defendants in a 

truck which the officer had probable cause to believe had

violated certain traffic regulations. Upon stopping the truck,

the officer saw two large plastic bags which appeared to contain

crack cocaine in the driver's hands. The officer then arrested

the defendants and seized the drugs. The defendants were charged

and convicted of various federal drug offenses and the Supreme

Court affirmed. 

 The Whren Court reiterated its holding in Robinson, 414 

U.S. at 221 n.1, that "a traffic-violation arrest (of the sort

 -7-

here) would not be rendered invalid by the fact that it was 'a

mere pretext for a narcotics search.'" Whren, 116 S. Ct. at 1774. 

Stating that subjective intentions play no role in a probable

cause analysis under the Fourth Amendment, the Court held the

"fact that the officer does not have the state of mind which is

hypothecated by the reasons which provide the legal justification

for the officer's action does not invalidate the action taken as

long as the circumstances, viewed objectively, justify that

action.'" Id. (citing Scott v. United States, 436 U.S. 128, 138 

(1978)). 

 The State Police Troopers plainly had probable cause to

stop Bizier's car on the Maine Turnpike because Bizier was

travelling almost ten miles above the posted speed limit. Bizier

contends, however, that although this may have been a valid stop

for a traffic violation, there was no probable cause for his full

custody arrest without consideration of the actual crack cocaine

discovered during the body search. In this connection, Bizier

contends that probable cause for an arrest supporting a search

incident thereto can exist only for the actual offense ultimately

charged. He argues that because he was, in the end, charged with

a cocaine offense relating to the drugs found during the search,

there was no preexisting probable cause and therefore no

justification for that arrest. 

 As a legal proposition, the argument is without merit.

The probable cause justifying a lawful custodial arrest, and

 -8-

therefore a search incident to that arrest, need not be for the

charge eventually prosecuted. See e.g., Barna v. City of Perth 

Amboy, 42 F.3d 809, 819 (3d Cir. 1994) ("Probable cause need only 

exist as to any offense that could be charged under the 

circumstances") (emphasis added); Barry v. Fowler, 902 F.2d 770, 

773 n.5 (9th Cir. 1990); Gassner v. City of Garland, 864 F.2d 

394, 398 (5th Cir. 1989); Mutter v. Town of Salem, 945 F. Supp. 

402, 407 n.5 (D.N.H. 1996). Consequently, a finding of probable

cause for any offense justifying full custodial detention can

validate the search in this case as incident to a lawful arrest. 

 We need not pause to consider the question whether a

stop for speeding, an offense which does not ordinarily involve

anything beyond a fine,1 would support a body search. Cf. 

Robinson, 414 U.S. at 236 n.6. (declining to reach question 

whether "'a routine traffic stop,' i.e., where the officer would 

simply issue a notice of violation and allow the offender to

proceed" would justify a full body search of the person stopped);

see also United States v. Lott, 870 F.2d 778, 781-82 (1st Cir. 

1989) (police making justified investigatory stop not authorized

to make body search where there was no fear for their safety).

  

1 A speeding violation does not involve a criminal offense
punishable with incarceration in Maine unless the driver exceeds
the speed limit by 30 miles per hour or more. Me. Rev. Stat.
Ann. tit. 29-A, 2074(5) (West 1996). Bizier was not going more
than ten miles per hour above the posted speed limit and thus
would be subject simply to a fine for the speeding violation.

 -9-

The information learned by the troopers here quickly escalated to

probable cause for a full custody arrest. These developments at

the roadside after the initial traffic stop, which were entirely

separate from the cocaine discovery, provided probable cause for

a full custody arrest for a serious traffic violation--operating

the truck under the influence of a drug. Both troopers who

executed the stop testified at the suppression hearing that it

took longer than usual for Bizier to pull over to the roadside.

When Trooper Curran approached Bizier, he noted that Bizier's

eyes were glassy, his eyelids were heavy, his pupils were

pinpoints and he was swaying. Bizier and the passenger in the

truck told the troopers inconsistent stories. These factors

together created probable cause for a driving under the influence

arrest2 following the otherwise justifiable traffic stop.

 When the police dog called to the scene arrived, it

alerted to the presence of narcotics on seat covers on the front

seat, the front edge of the front seat and in the gearshift area,

as well as a box which had been next to the front seat. In

addition, Bizier admitted to Trooper Curran that he had marijuana

remains in his truck. This admission regarding the presence of

  

2 An operating under the influence violation is punishable with
incarceration in Maine. Me. Rev. Stat. Ann. tit. 29-A, 2411(5).
Indeed, Maine law independently authorizes a warrantless arrest
when a law enforcement officer has probable cause and "the arrest
occurs within a period reasonably likely to result in the
obtaining of probative evidence of . . . drug concentration."
Id. at 2411(4). 

 -10-

contraband corroborated other evidence supporting probable cause

for driving under the influence.

 Moreover, as we held in United States v. Staula, 80 

F.3d 596, 603 (1st Cir.), cert. denied, 117 S. Ct. 156 (1996), it 

cannot seriously be disputed that once an officer has found

evidence of marijuana in a truck he has stopped for a motor

vehicle violation he has probable cause to arrest the occupants

of the truck on a possession charge.3 

 The unfolding observations which flowed from the valid

traffic stop provided more than sufficient probable cause before

the challenged search to arrest Bizier at a minimum for driving

the truck under the influence of a controlled substance he

illegally possessed in the vehicle. 

 2. Search Flowing From Cocaine Dealing Arrangements 2. Search Flowing From Cocaine Dealing Arrangements 

 A law enforcement officer may make an arrest if there

is probable cause to believe that the suspect has committed some 

felony offense. See Watson, 423 U.S. at 415-424. When Trooper 

Curran pulled over Bizier on the Maine Turnpike, there was

probable cause, collectively known to the involved Maine law

enforcement personnel based on the two controlled buys of cocaine

from Bizier, to arrest Bizier for cocaine possession and
  

3 Bizier contends that because possession of marijuana is a
civil infraction in Maine, the possession itself did not provide
independent grounds for arrest. Possession of marijuana in any
quantity, however, is also a crime under federal law which
independently supports an arrest. See 21 U.S.C. 844. 
Furthermore, the presence of the marijuana in the truck fortified
the probable cause for a driving under the influence arrest.

 -11-

distribution. Bizier himself concedes that at the time of the

stop, "[t]here did exist probable cause that Bizier had committed

prior drug transactions," Appellant's Brief at 5, but then notes

that no arrest was made based on those transactions. As we

observed above, probable cause need only exist as to any offense

that could be charged under the circumstance. Thus, it is

immaterial that the arrest grounds differed from the ultimate

charging decision. It is uncontested that probable cause for an

arrest did exist based on those two controlled buys in the

previous two weeks. Thus, the search of Bizier immediately

before his formal arrest could be justified as a search incident

to arrest based on the controlled buys alone. See Rawlings, 448 

U.S. at 111.

 Bizier, in oral argument, challenged the validity of

the two controlled buys as a basis for probable cause, claiming

that they were "stale." While a long delay in seeking a search 

warrant can create difficulties if the information is stale, See 

Watson, 423 U.S. at 450 n.14 (Marshall, J., dissenting), probable 

cause to arrest, "once formed will continue to exist for the 

indefinite future, at least if no intervening exculpatory facts

come to light." Id. at 449 (Marshall, J., dissenting) (citations 

omitted). As Justice Powell observed in his concurrence,

probable cause to support an arrest normally does not grow stale

because "once there is probable cause to believe that someone is

a felon the passage of time often will bring new supporting

 -12-

evidence"; such probable cause would grow stale only if it

emerges that it was based on since discredited information. Id. 

at 432 n.5. Here, rather than the development of intervening

information that weakened the probable cause based on the

controlled buys, information emerged that actually strengthened

the basis for arrest on cocaine distribution charges. 

 In any event, the period of time between the controlled

buys and the arrest was not so long here as to render the

probable cause stale in any meaningful temporal sense. The

arrest occurred just four days after the second controlled buy

and less than two weeks after the first controlled buy at a time

when there was probable cause to believe additional drugs were

being transported in a moving vehicle.

 We can find no suggestion the police acted in bad faith

by seeking unfairly to rely upon probable cause from an abandoned

prior arrest opportunity in order to effect an otherwise

insupportable current arrest and thereby exploit the right of

search incident to arrest. In this connection, we note Justice

Powell's observation that "[g]ood police practice often requires

postponing an arrest, even after probable cause has been

established, in order to place the suspect under surveillance or

otherwise develop further evidence necessary to prove guilt to a

jury." Id. at 431. The law enforcement response here was 

measured and restrained as the MDEA agents on the one hand and

 -13-

the troopers on the other pursued legitimate investigative

techniques to develop an appropriate case regarding Bizier. 

 In the end, there was probable cause before the search

for arrest on the charge of possession with intent to distribute

the cocaine for which Bizier was convicted. The MDEA had

received information from the confidential informant that Bizier,

on the day of the stop, was travelling to Massachusetts in his

truck to purchase cocaine and carry it back to Maine that

evening. The MDEA agents were in the confidential informant's

home when the informant received a call from Bizier's girlfriend

telling the informant that Bizier would be returning that day

from his trip to Massachusetts around 6:00 p.m. The MDEA agents

provided a complete description of the truck, including its plate

numbers to the Maine troopers. When the troopers stopped Bizier,

he was travelling in the truck the MDEA agents had identified at

around the time which the confidential informant told the agents

he would be returning to Maine. This information in conjunction

with the two controlled buys, all of which was developed within a

span of less than two weeks, supported the existence of probable

cause for a cocaine trafficking offense arrest that day

independent of the discovery of the cocaine on Bizier's body. As

such, the search itself was proper as one incident to a lawful

arrest for such an offense under traditional exceptions to the

warrant requirement of the Fourth Amendment. See Robinson, 414 

U.S. at 224.

 -14-

 III III

 Under settled Fourth Amendment principles specifically

applicable here, there was sufficient probable cause to arrest

Bizier provided both by evidence flowing from the traffic stop on

January 23 and by evidence flowing from the course of cocaine

dealing arrangements between Bizier and the confidential

informant o justify the body search of Bizier incident to his

lawful arrest.

 Affirmed. Affirmed.

 -15-