Bernard **FLOWERS**, Plaintiff,

v.

Officer Darren **FIORE**, Officer Larry Silvestri, Officer Michael Garafola, all individually and in their official capacities as Town of Westerly Police Officers, The Town of Westerly, Nicholas Castagna, President of the Town Council, for the Town of Westerly, Defendants.

C.A. No. 01–250T.

United States District Court, D. Rhode Island.

Jan. 9, 2003.

---

9. *See also* plaintiffs' opposition (docket No. 37); defendants' reply (docket No. 38) and plaintiffs' sur-reply (docket No. 39).

David Cicilline, Thomas G. Briody, Esq., Providence, RI, for Plaintiff Bernard Flowers.

Michael J. Colucci, Olenn & Penza, Warwick, RI, for Defendants.

### MEMORANDUM AND ORDER

TORRES, Chief Judge.

Bernard Flowers brought this action, pursuant to 42 U.S.C. § 1983, claiming that officers of the Westerly, Rhode Island Police Department violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution when they detained him on September 24, 2001. More specifically, Flowers alleges that he was detained without justification; solely because he is an African–American and that the police used excessive force. These allegations also are the basis for asserting a variety of state law claims that Flowers makes.

The defendants have moved for summary judgment. With respect to the federal claims, they argue that there were no constitutional violations; and that, in any event they are shielded from liability by the doctrine of qualified immunity. With respect to the state law claims, the defendants argue that there are no facts to support those claims.

Because the undisputed facts fail to establish any constitutional violation, the defendants' motion for summary judgment is granted with respect to the federal claims and the parties are ordered to show cause why the state law claims should not be dismissed without prejudice.

### Facts

The undisputed facts are as follows. On September 24, 2001 at approximately 11:55 A.M., the Westerly police received a telephone call from Nunzio Gaccione, a Westerly resident. Gaccione reported that he had received a telephone call in which a man who identified himself as Butch Corbin said that, because of a dispute with Gaccione's grandson, he was "sending two colored people over . . . to start some trouble."

Defendant Darren Fiore, a Westerly police officer, was dispatched to the Gaccione residence to investigate. When Fiore arrived, Gaccione quoted Corbin as saying

that he was sending over "two black guys with a gun." Gaccione also stated that, shortly after receiving Corbin's call, he had observed two black men drive past his house in a small grey or black vehicle.

Based upon that information, Fiore parked his patrol car a short distance from the Gaccione residence in order to watch for the car described by Gaccione. Fiore also radioed other officers in the area to be on the lookout for a "smaller model gray or black colored vehicle" occupied by "[t]wo black males" who might have a handgun with them.

At approximately 12:30 P.M., Fiore saw Flowers drive by in small gray vehicle fitting the description provided by Gaccione. Fiore followed the vehicle and used his onboard computer to perform a registration check. The information received by Fiore was that the license plate on Flowers' vehicle had been issued to a vehicle different from the one that Flowers was driving. Accordingly, Fiore radioed for help and signaled Flowers to pull over. After Flowers' vehicle had stopped, Fiore used his loudspeaker to instruct Flowers to remain in his car and to keep his hands visible at all times.

A few minutes later, officers Larry Silvestri and Michael Garafola arrived. They positioned themselves behind Fiore's vehicle, drew their guns, and pointed them at Flowers' vehicle. Fiore, then, directed Flowers to step out of his vehicle with his hands in the air. Flowers complied and was instructed to walk backwards toward the officers. When Flowers reached the area where the officers were standing, Fiore told him to kneel and to lock his fingers behind his head. Flowers did so and was handcuffed while his car was searched. The search uncovered no weapons or contraband and showed that Flowers was alone. Meanwhile, a check of the vehicle identification number on Flowers' vehicle revealed that, even though it was not the vehicle for which the license plate had been issued, the vehicle belonged to Flowers.

At that point, Fiore removed Flowers' handcuffs and told Flowers that he was free to go. Flowers, who apparently was understandably shaken, stated that he did not feel able to drive and asked to use a telephone to call his wife. Fiore replied that he did not have a phone but that there was a phone in a business across the street that Flowers could use.

### The Claims

The complaint contains four counts. Count I alleges that Flowers was detained because of his race in violation of the equal protection clause of the Fourteenth Amendment, U.S. Const. amend. XIV, § 1. Count II alleges that the defendant officers violated Flowers' Fourth Amendment rights because they lacked probable cause to detain him and because they used excessive force. It also seeks recovery from the Town of Westerly (the "Town") on the ground that the Town allegedly failed to properly train and supervise the defendant officers. Count III asserts state law claims for assault and battery, false imprisonment, and intentional infliction of emotional distress. Count IV asserts claims for violations of Flowers' rights under the Rhode Island Constitution.

In their motion for summary judgment, the defendants argue that there was no violation of Flowers' constitutional rights because there was probable cause to detain him and because any force used was objectively reasonable. The defendants also argue that, in any event, they are entitled to qualified immunity because a reasonable police officer would not have believed that their conduct was unlawful under the circumstances.

### Standard of Review

Summary judgement is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgement as a matter of law." Fed.R.Civ.P. 56(c). A "genuine" issue is one that "properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if it "might affect the outcome of the suit" under the applicable legal standard. *Id.* at 248, 106 S.Ct. 2505. In deciding whether a genuine issue of material fact exists, the Court views the evidence in the light most favorable to the nonmovant and draws all reasonable inferences in that party's favor. *United States v. One Parcel of Real Property*, 960 F.2d 200, 204 (1st Cir.1992).

### Discussion

The threshold question is whether Flowers' allegations, if proven, would establish a constitutional violation. Unless that question is answered affirmatively, there is no need to address the issue of qualified immunity. *Aversa v. United States*, 99 F.3d 1200, 1215 (1st Cir.1996) ("A court may ... bypass the qualified immunity analysis if it would be futile because current law forecloses the claim on the merits."); *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

### I. *The Unreasonable Detention Claim*

■ The detention of a person whose automobile has been stopped is a "seizure" within the Fourth Amendment's prohibition against "unreasonable searches and seizures." *Whren v. United States*, 517 U.S. 806, 809–810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). A brief investigatory detention does not violate the Fourth Amendment if the officers have a "reasonable and articulable suspicion" of past or present criminal activity. *United States v. McCarthy*, 77 F.3d 522, 529 (1st Cir.1996). However, where police actions taken during the stop exceed what is necessary to dispel the suspicion that justified the stop, the detention amounts to an "arrest" and is lawful only if it is supported by probable cause. *United States v. Richardson*, 949 F.2d 851, 856 (6th Cir.1991). Probable cause to detain exists where the detaining officer has reasonably trustworthy information regarding facts and circumstances that would lead a prudent person to believe that an offense has been or is being committed by the person detained. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

■ Here, the defendant officers had ample reason to detain Flowers. Gaccione reported receiving a threat that two black men with guns were coming to his home to cause trouble and, shortly thereafter, he told Fiore that two black men in a gray or black car had driven slowly by his home. A few minutes later, Fiore observed Flowers, a black man, driving toward Gaccione's home in a car fitting the description provided by Gaccione and bearing license plates not issued to that vehicle. Consequently, it was reasonable for Fiore to believe that Flowers was one of the armed men coming to Gaccione's home to cause trouble. It was equally reasonable for Silvestri and Garafola to share that belief after hearing the alert broadcast by Fiore and his call for backup. Moreover, the detention did not exceed the time required to dispel the belief that Flowers was one of the men described by Gaccione. As soon

as the officers determined that Flowers was alone, unarmed, and owned the vehicle that he was driving, they released him.

## II. *The Excessive Force Claim*

■ The use of excessive force by police officers also violates the Fourth Amendment's prohibition against unreasonable seizures. Excessive force claims are judged under an "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Among the relevant factors to be considered in assessing "reasonableness" are the degree of force used, the severity of the crime at issue, whether the suspect poses an immediate threat to the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Id.* at 396, 109 S.Ct. 1865. Furthermore, the determination regarding reasonableness "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97, 109 S.Ct. 1865.

■ Here, there is no allegation that the officers ever touched Flowers except to place handcuffs on his wrists and; as the Supreme Court has said, " '[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Id.* at 396, 109 S.Ct. 1865 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973)). Furthermore, under the circumstances, Silvestri and Garafola were justified in drawing their guns. They had good reason to believe that Flowers was armed and dangerous and, although they briefly pointed their weapons in Flowers' direction, they did so for the limited purpose of protecting themselves and ensuring that Flowers was secured without incident.

## III. *The Equal Protection Claim*

■ Selective enforcement of motor vehicle laws on the basis of race, also known as "racial profiling", is a violation of equal protection. *Chavez v. Illinois State Police*, 251 F.3d 612, 635 (7th Cir.2001). In order to prevail on this claim, Flowers must present evidence that he was treated differently from similarly situated white motorists and that the action taken against him was motivated, at least in part, by his race. *Id.* at 635–36, 645. Flowers has failed to do either.

■ Flowers has neither alleged nor presented any evidence that he was treated any differently from similarly situated white motorists. Nor has Flowers presented any evidence that would support a conclusion that the officers detained him because of his race. Indeed, Flowers' memorandum in opposition to summary judgment does not even mention his equal protection claim.

## IV. *Municipal Liability*

Flowers' claim against Town of Westerly fails for two reasons.

■ First, any liability that the Town may have under § 1983 is derivative. The Town cannot be found liable unless its officers violated Flowers' constitutional rights. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point."). Here, as already noted, there was no constitutional violation by the officers.

Second, Flowers has failed to present even a scintilla of evidence that the Town failed to properly train the defendant officers let alone that the alleged failure amounted to "deliberate indifference." *See Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 209 (1st Cir.1990) (summary judgment "manifestly appropriate" where plaintiff fails to offer even a scintilla of evidence that the municipality failed to train its officers and that the failure to do so constituted "deliberate indifference").

## V. *The State Law Claims*

Since this Court has determined that summary judgment should be granted with respect to Flowers' federal claims, it has discretion to decide whether supplemental jurisdiction over the remaining state law claims should be retained. 28 U.S.C. § 1367(c). Generally, dismissal of a plaintiff's federal claims at the early stages of a suit triggers dismissal of any supplemental state law claims. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("[I]f the federal claims are dismissed before trial ... the state claims should be dismissed as well."). The rationale is that " 'the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will all point toward declining to exercise jurisdiction over the remaining state-law claims.' " *Rodriguez v. Doral Mortgage Corp.,* 57 F.3d 1168, 1177 (1st Cir.1995) (quoting *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)).

Here, there is no reason for departing from the general rule. Accordingly, this Court declines to address the motion for summary judgment with respect to the state law claims and directs the parties to

show cause, if any, why those claims should not be dismissed without prejudice.

## *Conclusion*

This case aptly illustrates the difficulty that sometimes exists in harmonizing the need for resolute action by law enforcement officers that is required to safeguard the public and the need to prevent the rights of individual citizens from being infringed by police misconduct. It also underscores the importance of mutual understanding in those situations where these interests clash.

It is always unfortunate when an individual becomes an innocent victim of events that he did nothing to set in motion and is subjected to a traumatic event like the one experienced by Mr. Flowers. Under such circumstances, any citizen would be understandably upset and entitled to both a good explanation and an apology. In this case, the record does not indicate whether either was given before litigation was commenced. On the other hand, it is equally unfortunate that, when incidents like this one occur, unsupported allegations sometimes are made that the police officers were motivated by racial prejudice. The gravity of such allegations may unfairly tarnish the reputations of the officers and deter them, in the future, from fully performing their very difficult duties.

There is little that this Court can do to prevent such unfortunate incidents from occurring or to prevent them from being compounded by assumptions that the officers' actions were attributable to vile motives. This Court is limited to judging each case on the basis of the facts presented. Accordingly, for the reasons previously stated, the defendants' motion for summary judgment is granted with respect to Counts I and II, and the parties are directed to show cause, no later than January

22, 2003, why Counts III and IV should not be dismissed without prejudice.