Richard J. FOREST; Nancy Forest; and Elizabeth Forest, Plaintiffs,

v.

PAWTUCKET POLICE DEPART-MENT; City of Pawtucket, by and through its Treasurer, Ronald Wun-schel; John Clarkson, in his individual and Official Capacity; Scott M. Feeley, in his individual and Official Capacity; George L. Kelly, III, in his individual and Official Capacity; William Magill, in his individual and Official Capacity; Dennis Smith, in his individual and Official Capacity; John Doe I [1], in his individual and Official Capacity; Jeffrey T. Montella, alias; Gail Montella, alias, individually and as Parent and/or Legal Guardian of Jeffrey T. Montella, alias; Charles T. Montella, individually and as Parent and/or Legal Guardian of Jeffrey T. Montella, alias, Defendants.

No. C.A. 02–164–L.

United States District Court,
D. Rhode Island.

Oct. 22, 2003.

1. No John Doe was ever identified or served, so that claim will be disregarded. *See Pride Chrysler Plymouth, Inc. v. Rhode Island Mo-*tor, 721 F.Supp. 17, 18 (D.R.I.1989)(disregarding claims when plaintiffs have not identified the party pleaded as "John Doe").

Jeffrey D. Sowa, Carrara, LaPlante, Dayian & Sowa, LLP, Providence, RI, for plaintiffs.

Marc DeSisto, DeSisto Law, Providence, RI, for defendants.

Charles Montella, Providence, RI, Pro Se.

## OPINION AND ORDER

LAGUEUX, Senior District Judge,

Plaintiffs, Richard, Nancy and Elizabeth Forest, present this Court with a multicount complaint against two sets of defendants. The first set of defendants includes the Pawtucket Police Department, the City of Pawtucket, John Clarkson, Scott M. Feeley, George L. Kelly, III, William Magill, and Dennis Smith ("the Pawtucket Defendants"). The second set of defendants includes Jeffrey T. Montella, Gail Montella, and Charles Montella, ("the Montella Defendants"). Plaintiffs claim that this Court has jurisdiction based on their assertion of a federal question and diversity of citizenship.

Plaintiffs' Complaint contains eleven counts. In Count I, Plaintiff[2], Richard Forest, ("Forest") alleges that the Pawtucket Defendants violated the Fourth Amendment to the United States Constitution by arresting him without probable cause. Count II alleges that the Pawtucket Defendants violated the Fifth Amendment by engaging in arbitrary and capricious conduct, decision-making, and policy. In Count III, Forest makes a state law claim for intentional infliction of emotional distress. While the Complaint is unclear as to whether this Count relates to the

Pawtucket or Montella Defendants, this Court assumes that the Complaint refers to the Pawtucket Defendants. Count IV alleges negligence by the Pawtucket Defendants. Count V includes a claim for malicious prosecution against the Pawtucket Defendants. In Count VI, Plaintiffs Nancy and Elizabeth Forest allege that the Pawtucket Defendants' conduct caused them to suffer a loss of consortium. Count VII[3] presents a claim for punitive damages against all Defendants. Counts VIII through XI present state law claims for negligence, defamation, abuse of process, and interference with contract relations respectively against the Montella Defendants.

Forest's main thrust is against the Pawtucket Defendants utilizing 42 U.S.C. § 1983. He argues that the Pawtucket Defendants violated his rights under the Fourth and Fifth Amendments to the United States Constitution by arresting him without probable cause. This matter is before the Court on the Pawtucket Defendants' motion for summary judgment. They contend that they did not violate Forest's constitutional rights because they arrested Forest pursuant to an arrest warrant based on probable cause. Alternatively, the Pawtucket Defendants argue that there is no liability on their part because of the doctrine of qualified immunity.

This Court is persuaded by both of these arguments. The Pawtucket Defendants did not violate Forest's rights under the Fourth or Fifth Amendments because they

---

**2.** Nancy and Elizabeth Forest's only cause of action lies in Count VI, a state law claim for loss of consortium. The § 1983 claims are asserted solely by Richard Forest. Therefore, for purposes of this decision, the Court will refer only to Plaintiff, Richard Forest.

**3.** Plaintiffs' Complaint numbers both claims for loss of consortium and punitive damages as Count VII. For present purposes, the Court simply assumes that the latter is misnumbered, and should read Count VII. That is the punitive damages claim.

conducted an adequate investigation and secured an arrest warrant based on probable cause. In addition, the doctrine of qualified immunity shields them from suit on Forest's § 1983 claims. Therefore, this Court grants the Pawtucket Defendants' motion for summary judgment on all counts against them (Counts I–VII). The Court expresses no opinion on the viability of the state law claims asserted against the Montella Defendants because they did not file a motion for summary judgment.

## I. Background and Procedural History

In considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *See Springfield Terminal Ry. Co. v. Canadian Pac. Ltd.*, 133 F.3d 103, 106 (1st Cir.1997). Therefore, this writer presents the following factual recitation with the above rule in mind.

Forest is a Massachusetts resident who works for the Pawtucket School Department. He is a full-time special education teacher at Tolman High School and has held this position for approximately thirty years. He teaches a "Life Skills" class for children with special needs.

The City of Pawtucket Police Department employs Defendants, Scott M. Feeley, Dennis R. Smith, William Magill, and John Clarkson, who act as agents, servants, and employees of the City of Pawtucket as police officers. Forest sues each officer individually and in his official capacity. Defendant, George L. Kelly III was the Chief of the Pawtucket Police Department and acted in that capacity at the time of this incident. The City of Pawtucket is a municipal corporation within the State of Rhode Island and employs the aforementioned defendants.

On January 24, 2000, the date of the incident at issue, there were seven students enrolled in Forest's Life Skills class.

One student, Defendant Jeffrey Montella ("Jeffrey"), is the complaining witness in this case. Cheryl Ann Lainhart, a teaching assistant assigned to Forest's class, was also present on this date.

Jeffrey was fifteen years old and a Rhode Island resident at the time of the alleged incident. On January 24, 2000, Jeffrey left Forest's classroom and went to the school principal's office. Jeffrey told Principal Rousselle, that Forest had touched him inappropriately during class. At Rousselle's request, Jeffrey provided a written statement detailing the incident.

At about 5:00 p.m. that evening, Jeffrey and his mother, Defendant Gail Montella, went to the Pawtucket Police Department and filed a formal complaint against Forest. The two spoke with Defendant, Officer Dennis R. Smith. Jeffrey gave Officer Smith a written statement saying that Forest grabbed and rubbed Jeffrey's penis during class. Jeffrey also stated that Forest had previously touched him by rubbing his shoulders and legs. Jeffrey's mother witnessed this statement.

Jeffrey's complaint was then referred to Detectives Scott M. Feeley and William Magill. They re-interviewed Jeffrey and his mother on January 24, 2000. During this interview, Jeffrey drew a diagram depicting himself seated facing the class at the time of the incident. Gail Montella also gave the detectives a written statement affirming that Jeffrey told her Forest inappropriately touched him during class and complained about Forest previously rubbing his shoulders. She also stated that Forest had given gifts to the family on a prior occasion.

Detectives Feeley and Magill also interviewed Principal Rousselle on January 24, 2000. Although he did not witness Forest touching Jeffrey, Rousselle confirmed that Jeffrey had made an oral complaint and

given a written statement regarding the incident. The detectives attempted to contact Forest and left a message on his answering machine at about 8:30 that evening. The detectives reached Forest at about 9:10 p.m. and asked him to come to the police station. Forest declined because he was unable to reach his attorney. At about 10:00 p.m., and after speaking with his attorney, Forest called the detectives to say he would come to the station the next morning.

After receiving Jeffrey's complaint and verifying it with Jeffrey's mother and Principal Rousselle, Detective Feeley prepared an affidavit in support of an arrest warrant. Detective Feeley did not interview Forest, teaching assistant Lainhart, or the other students present at the time of the incident prior to preparing the arrest warrant application. Detective Feeley's affidavit asserted that Jeffrey stated that he was at Toleman High School when Forest asked him where he got his new fleece jacket. Jeffrey responded that his mom had bought it for him. The affidavit states that according to Jeffrey, Forest reached between Jeffrey's legs and grabbed Jeffrey's penis and then Forest slid his hand upward rubbing Jeffrey's penis until Forest's hand came off at which time Forest rubbed the fleece material between his fingers. Jeffrey immediately left the classroom and went to tell Principal Rousselle what had happened. The affidavit notes that Jeffrey made an identical complaint to his mother.

Detective Feeley also included the fact that Jeffrey had made previous complaints to his mother about Forest. Jeffrey had complained that Forest rubbed his shoulders on one occasion and Jeffrey's upper thigh on another. The affidavit also states that Mrs. Montella did not pursue these complaints because she thought Forest was just being nice to Jeffrey and that

Forest had previously given the Montellas a large bag of Christmas gifts and a $50 gift certificate to Shaw's Supermarket despite the fact that Forest barely knew the family at the time.

Detective Feeley knew but did not include the following facts in his affidavit supporting the arrest warrant. Jeffrey is a special needs student and takes ritalin for attention deficit hyperactivity disorder. Prior to this incident, Jeffrey was not angry with Forest for any reason and stated he had no reason to hurt Forest because Forest had been good to his family. Officer Smith had also interviewed Jeffrey and found him credible. Based on Detective Feeley's affidavit, Bail Commissioner Ernest Pratt found probable cause to arrest and approved and signed the warrant.

Forest and his attorney appeared at the Pawtucket police station on January 26, 2000. The detectives arrested Forest and charged him with second degree sexual assault. They then referred the alleged assault to the State Attorney General's office for prosecution.

The Pawtucket School Department also investigated Jeffrey's allegations. On February 8, 2000, the investigator sent a letter to the Superintendent concluding "[t]here was no credible evidence presented that Jeffrey Montella was fondled sexually by Richard Forest in the Life Skills Class." On April 19, 2000, the Attorney General's office declined to prosecute Forest. Consequently, the Rhode Island District Court dismissed the criminal case.

Plaintiffs presented their claims to the Pawtucket City Council as required by Rhode Island General Law § 45–15–5. The Council denied the claims on October 9, 2001. Plaintiffs then filed their original complaint with this Court on April 8, 2002. The Pawtucket Defendants answered the complaint on May 16, 2002. Plaintiffs later amended the Complaint and the First

Amended Complaint is now the operative Complaint in this case. The Pawtucket Defendants seek summary judgment on all claims asserted against them. This matter having been briefed and argued, is now in order for decision.

## II. Summary Judgment Standard

The Pawtucket Defendants moved for summary judgment on all counts asserted against them under Rule 56(c) of the Federal Rules of Civil Procedure. Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on a summary judgment motion:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). The critical inquiry is whether a genuine issue of material fact exists. *Menebhi v. Mattos,* 183 F.Supp.2d 490, 498 (D.R.I.2002). "Material facts are those 'that might affect the outcome of the suit under the governing law.'" *Morrissey v. Boston Five Cents Sav. Bank,* 54 F.3d 27, 31 (1st Cir.1995)(quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). There is a genuine dispute over a material fact when the evidence is such that a reasonable jury could find for the nonmoving party. *Id.*

In determining whether summary judgment is appropriate, the Court must view the facts in the record and all inferences therefrom in the light most favorable to the nonmoving party. *See Springfield Terminal Ry. Co. v. Canadian Pac. Ltd.,* 133 F.3d 103, 106 (1st Cir.1997). Where the facts support plausible yet conflicting inferences on a central issue in the case, the Court may not choose between such inferences on a motion for summary judgment. *Menebhi,* 183 F.Supp.2d at 498 (citing *Coyne v. Taber Partners I,* 53 F.3d 454, 460 (1st Cir.1995)). Summary judgment "is not appropriate merely because the facts offered by the moving party seem most plausible, or because the opponent is unlikely to prevail at trial." *Gannon v. Narragansett Elec. Co.,* 777 F.Supp. 167, 169 (D.R.I.1991). At the summary judgment stage, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood." *Greenburg v. Puerto Rico Maritime Shipping Auth.,* 835 F.2d 932, 936 (1st Cir.1987). Summary judgement is only available when there is no dispute as to any material fact and only questions of law remain. *See Blackie v. Maine,* 75 F.3d 716, 721 (1st Cir.1996). The moving party bears the burden of showing that no evidence exists to support the nonmoving party's position. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Rochester Ford Sales, Inc. v. Ford Motor Co.,* 287 F.3d 32, 38 (1st Cir.2002).

## III. Discussion

The Pawtucket Defendants make two arguments in support of the present motion. First, that probable cause supports the arrest warrant issued by Bail Commissioner Pratt and therefore Forest's § 1983 claims have no viability. Second, that they are entitled to judgment as a matter of law because the doctrine of qualified immunity shields them from liability.

The Supreme Court has instructed courts to separate a qualified immunity analysis from the merits of a § 1983 claim because a qualified immunity analysis does not address the substantive viability of the

underlying constitutional claim. *Menebhi,* 183 F.Supp.2d at 504. Courts are to first decide the applicability of qualified immunity. *Id.; See St. Hilaire v. City of Laconia,* 885 F.Supp. 349, 354 (D.N.H.1995)(noting the court must resolve qualified immunity claims at the earliest possible date after commencement of suit). Thus, when a defendant asserts the protection of qualified immunity, a court may never reach the merits of the underlying constitutional claim. *Menebhi,* 183 F.Supp.2d at 504.

■ However, there are certain cases where the inquiries into qualified immunity and the underlying merits are intertwined. *Id.; Morales v. Ramirez,* 906 F.2d 784, 787 (1st Cir.1990). In these cases the qualified immunity analysis unavoidably calls into question the existence of a constitutional violation. *Id. See also Camilo–Robles v. Hoyos,* 151 F.3d 1, 7–8 (1st Cir.1998) (noting in some cases, the qualified immunity and merit inquiries overlap). Since this is such a case, the Court will consider both the assertion of qualified immunity and the issue of a constitutional violation.

*A. The Doctrine of Qualified Immunity*

■■ The doctrine of qualified immunity protects government officials performing discretionary functions from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Menebhi,* 183 F.Supp.2d at 498–99; *Wojcik v. Town of N. Smithfield,* 874 F.Supp. 508, 521 (D.R.I. 1995). The doctrine attempts to balance citizens' rights with the need to protect officials who are required to use discretion in carrying out their public functions. *Wojcik,* 874 F.Supp. at 521. The general rule of qualified immunity gives government officials the ability "reasonably to anticipate when their conduct may give rise to

liability for damages." *Id.* (quoting *Anderson v. Creighton,* 483 U.S. 635, 646, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

■ Qualified immunity is not a defense to liability. *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *See also, Menebhi,* 183 F.Supp.2d at 499. The doctrine preempts determinations of liability by immunizing government officials from suit. *Id.* As such, the issue of qualified immunity presents a legal question appropriate for this Court to decide on summary judgment. *Id.*

■ The threshold question in a qualified immunity analysis is whether, viewing the case in the light most favorable to the party asserting the injury, the facts alleged show a constitutional violation. *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. If the court finds the parties' submissions demonstrate a constitutional violation, the next step is to determine whether the right was clearly established. *Id.* The dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id. See also, Strail v. Dep't of Children, Youth, and Families of the State of Rhode Island,* 62 F.Supp.2d 519, 529 (D.R.I.1999) (applying the above analysis to determine qualified immunity). At this point, courts are to apply a standard of objective reasonableness. *Menebhi,* 183 F.Supp.2d at 499. *See also, Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (holding the objective reasonableness standard defines the qualified immunity doctrine). A court must make these inquiries in sequence and a single negative finding is sufficient to defeat a plaintiff's claim. *Hatch v. Dep't for Children, Youth & Their Families,* 274 F.3d 12, 20 (1st Cir.2001); *Fusco v. Goodale,* No. 02–264–P–H, 2003 WL 21960400

at *5 (D.Me. Aug.14, 2003). For example, if a court finds no violation of a constitutional right, there is no need for further inquiries regarding qualified immunity. *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151.

### Constitutional Violation

Count I of the Complaint raises Fourth Amendment issues stemming from Forest's alleged unlawful arrest. Forest argues that the facts available to the police officers do not support a finding of probable cause for two reasons. First, the police conducted an inadequate investigation and could not reasonably conclude that they had probable cause to arrest Forest. Second, Detective Feeley omitted material facts in his affidavit which were crucial to determining probable cause.

The Fourth Amendment requires that arrests be based on probable cause. *Sietins v. Joseph*, 238 F.Supp.2d 366, 375 (D.Mass.2003). Probable cause, a predicate for qualified immunity, requires a non-technical analysis examining the totality of the circumstances. *Menebhi*, 183 F.Supp.2d at 499 (citations omitted). Probable cause to arrest exists when the facts and circumstances known to the arresting officer are sufficient to permit a reasonably prudent person to conclude that an offense has been, will be, or is being committed. *Id.*; *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979).

A finding of probable cause does not require an actual showing of criminality. *Menebhi*, 183 F.Supp.2d at 499. A court must find only a probability or substantial chance of illegal activity. *Id.* at 500. Probable cause to arrest may be based on less than a fifty percent probability of the suspect's guilt. *Id.* (quoting *Nowaczyk v. Town of N. Hampton*, No. Civ 97–635–JD, 2001 WL 274775, at *3 (D.N.H. Mar.15, 2001)). One asserting the existence of probable cause guarantees neither the accuracy of the information upon which he reasonably relies nor the ultimate conclusion he reasonably draws therefrom. *Roche v. John Hancock Mutual Life Ins. Co.*, 81 F.3d 249, 255 (1st Cir.1996). Although dependent upon the specific facts of each case, where there are no factual disputes, or if a court can resolve the issue based on undisputed facts, the existence of probable cause is a question of law for the court to answer. *Bryant v. Noether*, 163 F.Supp.2d 98, 108 (D.N.H.2001). *See Kauch v. Dep't for Children, Youth and Their Families*, 321 F.3d 1, 4 (1st Cir.2003)(noting whether or not the facts establish a constitutional violation is a question of law).

In assessing the presence of a constitutional violation, this Court must determine whether the officers had probable cause to seek an arrest warrant for second degree sexual assault. A person is guilty of this offense if he or she engages in sexual contact with another person and if any of the following circumstances exist: 1) the accused knows or has reason to know that the victim is mentally incapacitated, mentally disabled or physically helpless; 2) the accused uses force or coercion; or 3) the accused engages in the medical treatment or examination of the victim for purposes of sexual arousal, gratification or stimulation. R.I. Gen. Laws § 11–37–4 (2002). This Court concludes that the Pawtucket police officers involved in this matter conducted an adequate investigation and made no knowing or reckless omission of material information in the affidavit supporting the arrest warrant. In short, no reasonable jury could find that the Pawtucket Defendants violated Forest's constitutional rights.

*Adequacy of the Police Investigation*

Forest's first argument challenges the adequacy of the investigation of

Jeffrey's complaint. Forest argues that Detectives Feeley and Magill acted unreasonably by relying solely on Jeffrey's complaint and corroboration by non-witnesses in determining probable cause. This Court finds Forest's arguments unpersuasive.

 Circuit precedent is clear; the police may rely on a victim's information or positive identification to establish probable cause to arrest absent some reason to doubt the victim's reliability. *B.C.R. Transport Co., Inc. v. Fontaine*, 727 F.2d 7, 10 (1st Cir.1984)(noting that although not a per se rule, a probable cause determination predicated on information furnished by a victim is generally considered reliable); *accord Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir.1995); *Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir.1997); *Tangwall v. Stuckey*, 135 F.3d 510 (7th Cir.1998); *Clay v. Conlee*, 815 F.2d 1164, 1168–69 (8th Cir.1987); *Goodson v. City of Atlanta*, 763 F.2d 1381, 1386 (11th Cir.1985). When information comes from a victim or witness rather than an interested informant, there is a presumption that such information carries an indicia of reliability. *Greene v. City of Philadelphia*, No. Civ. A. 97–4264, 1998 WL 254062, at *7 (E.D.Pa. May 8, 1998). Permitting police officers to rely on a victim's apparent credible statement to determine probable cause is crucial, even when the victim's version is ultimately proven unreliable. *White v. Town of Marblehead*, 989 F.Supp. 345, 350 (D.Mass.1997). *See Menebhi*, 183 F.Supp.2d at 500 (noting once a reasonably credible complaint is made, the existence of probable cause does not depend upon the actual truth of the complaint and the focal point becomes the officer's knowledge). A rule requiring the police to second guess an otherwise coherent and credible witness in order to seek corroboration risks inconsistent and un-

equal application. *White*, 989 F.Supp. at 350. When the police establish probable cause, the law recognizes the need for urgent and decisive action and the Constitution does not require any further investigation. *Id.; Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir.1998)(noting if an officer has established cause on every element of a crime, there is no requirement he continue investigating in order to test the suspect's claim of innocence). The mere fact further investigation might have revealed a contrary conclusion is not enough to make the officer's conduct unreasonable. *White*, 989 F.Supp. at 350; *Hotaling v. LaPlante*, 167 F.Supp.2d 517, 522 (N.D.N.Y.2001). *See Kelley*, 149 F.3d at 646 (noting the inquiry is whether an officer has reasonable grounds on which to act, not whether it was reasonable to conduct further investigation).

Forest relies on *BeVier v. Hucal* and *Kuehl v. Burtis* for his argument that officers who ignore readily available evidence are not entitled to qualified immunity. *Pls.' Mem. Law Supp. Objection to Defs.' Mot. Summ. J.*, at 9. In *BeVier*, the Seventh Circuit found the officers' actions unreasonable because the officers failed to conduct *any* investigation and had no evidence of the plaintiff's intent, an essential element of a child neglect charge. *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir.1986)(emphasis added). In *Kuehl*, the Eighth Circuit found no immunity where the officers ignored exculpatory evidence negating the intent element required to sustain an assault charge. *Kuehl v. Burtis*, 173 F.3d 646, 651 (8th Cir.1999).

This Court finds both cases distinguishable. Detective Feeley had enough information to support probable cause regarding each element of second degree sexual assault and was not required to investigate further. *BeVier*, 806 F.2d at 128 (noting an officer who has established probable

cause on every element of the crime need not continue investigating). Detective Feeley had Jeffrey's complaint of sexual contact, which Jeffrey's mother and the Principal verified. Detective Feeley also knew Jeffrey was a special needs child who took ritalin for his disability. Furthermore, Forest has not presented any evidence to show that the officers ignored any facts that would negate a charge of second degree sexual assault. There is no evidence as to what the children or teaching assistant who were present in the classroom but not interviewed would have said.

This Court concludes that the present case is analogous to *Mutter v. Town of Salem*, 945 F.Supp. 402 (D.N.H.1996) and *White v. Town of Marblehead*, 989 F.Supp. 345 (D.Mass.1997). Like Detective Feeley's application for a warrant, the application at issue in *Mutter* relied on the victim's statements. *Mutter v. Town of Salem*, 945 F.Supp. at 405. The victim described incidents of sexual assault in detail and identified and described the perpetrator. *Id.* The detectives knew the victim made similar complaints to her mother and boyfriend. *Id.* The Court found the level of police investigation objectively reasonable, decided the officers had probable cause to arrest, and held that the officers were entitled to qualified immunity. *Id.* at 405, 406. In *White v. Town of Marblehead*, the police relied on the victim's complaint and did not interview anyone present at the time of the incident. 989 F.Supp. at 349. The Court noted that credible words describing "a coherent and dangerous narrative" were enough to establish probable cause. *Id.*

Similarly, Jeffrey made a coherent and credible complaint that the police officers could rely upon to establish probable cause. Detective Feeley had Jeffrey's oral and written statements accusing Forest of grabbing and rubbing Jeffrey's penis. Jef-

frey previously made the same allegations to his mother and Detective Smith, who found the child believable. Detective Feeley knew that Jeffrey also made the same allegations orally and in writing to Principal Rouselle. Jeffrey told Detective Feeley that he had no reason to hurt Forest because Forest had given Jeffrey's family Christmas gifts and a gift certificate to Shaw's Supermarket. Given these facts, Detective Feeley had no reason to doubt Jeffrey's reliability.

Like the complaint in *White*, Jeffrey's allegations described a "coherent and dangerous narrative" giving rise to a reasonable concern that Forest would continue teaching and possibly endanger other children if not arrested before the next day of school. *See Feeley Aff. Pls'. Ex. 2 at p. 57.* The totality of these circumstances leads this writer to conclude that Detectives Feeley and Magill conducted an adequate investigation, had probable cause to arrest Forest, and therefore, did not violate Forest's constitutional rights.

*Omissions*

■ Forest argues, in the alternative, that the detectives lacked a reasonable belief in the existence of probable cause because they intentionally omitted facts that the magistrate would have relied upon in determining whether or not to issue an arrest warrant. Specifically, the affidavit did not disclose that Jeffrey was a special needs student taking medication or that the incident took place in the presence of other students and a teaching assistant.

■ To establish a constitutional violation using this argument Forest must show: 1) Detectives Feeley and Magill knowingly and deliberately, or with a reckless disregard for the truth, made statements or omissions creating falsehoods in their warrant application; and 2) such statements were material or necessary to the finding of probable cause. *Menebhi,*

183 F.Supp.2d at 502. An officer makes an assertion with reckless disregard when viewing all the evidence, the officer must have entertained serious doubts regarding the truth of his statements or had obvious reasons to doubt the accuracy of the information reported. *Id.* at 503. The reckless disregard standard requires an officer to have a "high degree of awareness of the statement's probable falsity." *Id.* (quoting *Wilson v. Russo,* 212 F.3d 781, 788 (3d Cir.2000)).

However, awareness of a falsity is not enough to defeat a probable cause determination. *Menebhi,* 183 F.Supp.2d at 503. Forest must also show that the omitted information was material to determining probable cause. *Id.* To determine materiality, the court must insert the omitted information and determine whether the corrected affidavit evinces probable cause. *Id.; Freeman v. Murray,* 163 F.Supp.2d 478, 488 (M.D.Pa.2001). With an omission, the inquiry is whether its inclusion in the affidavit would have led to a negative finding of probable cause. *U.S. v. Castillo,* 287 F.3d 21, 25 (1st Cir.2002).

Forest has not presented the necessary factual dispute to avoid summary judgment on this issue. There is no evidence that Detectives Feeley and Magill omitted material facts from their affidavit knowingly, deliberately, or with a reckless disregard for the truth. Detective Feeley testified he does not put his entire case in a warrant application, includes only what is necessary to cover the elements of the crime, and would never leave something out just to get a magistrate to sign an arrest warrant. *Feeley Aff. Pls.' Ex. 2 at pgs. 14, 19.*

Forest has not presented any evidence that Detective Feeley should have entertained serious doubts as to the truth of his statements or the accuracy of his information. As stated above, Detective Feeley found Jeffrey credible and knew that Detective Smith previously interviewed Jeffrey and found him believable. Detective Feeley also knew that Jeffrey had given similar accounts to his mother and Principal Rousselle.

In addition, this Court concludes that the omitted information was immaterial to the probable cause determination. The fact that Jeffrey was a special needs student taking medication would have strengthened a probable cause determination as it supports the second element of second degree sexual assault, i.e. the presence of a mental disability. *See Castillo,* 287 F.3d at 27 (finding no material omission where the omitted information would have strengthened probable cause). Although the incident took place in front of other students and a teaching assistant and that could help establish Jeffrey's credibility by verifying or disputing his allegations, it was not material to a finding of probable cause. *See Lallemand v. Univ. of Rhode Island,* 9 F.3d 214, 215–17 (1st. Cir.1993)(finding officer entitled to qualified immunity where affidavit for arrest warrant was based on victim's statement and did not include statements from other witnesses).

As previously discussed, to be protected by the qualified immunity doctrine, the officers must have held a reasonable belief regarding probable cause. *Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991); *See Menebhi,* 183 F.Supp.2d at 500 (noting probable cause and qualified immunity are "inextricably linked such that the determinative issue in a qualified immunity dispute is whether an officer reasonably believed the information he or she possessed constituted probable cause"). Forest has not shown a knowing, deliberate, or reckless omission of material information to undermine the probable cause established by Jeffrey's consistent

and credible complaint. In short, there are no disputed material facts to support Forest's allegations of a constitutional violation and no further analysis regarding qualified immunity is required. *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151 (noting if there is no constitutional violation where the allegations are established, there is no necessity for further inquiries regarding qualified immunity). Therefore, as a matter of law, the Pawtucket Defendants are entitled to qualified immunity and are shielded from suit and liability on Plaintiff's § 1983 claims.

### B. Forest's § 1983 Claims

Forest's failure to show a right to recovery under § 1983 provides an additional reason to grant the motion for summary judgment. The statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. There are two elements required to establish a cause of action under § 1983. First, a plaintiff must allege the violation of a right protected by the Constitution or laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Second, a plaintiff must show that the defendant acted under color of state law. *Id.* In this case, there is no dispute that the officers acted under color of state law. Therefore, in order to survive summary judgment on his § 1983 claims, Forest must show that the Paw-

tucket police officers' conduct rose to the level of a constitutional violation. Given the above analysis, this Court concludes that Forest cannot sustain this burden.

### Forest's § 1983 Claims Based on the Fourth Amendment

Count I of the Complaint alleges violations of the Fourth Amendment based on Forest's alleged unlawful arrest. The essential predicate for a § 1983 claim for unlawful arrest is the absence of probable cause. *Kelley,* 149 F.3d at 646. *See, Menebhi,* 183 F.Supp.2d at 505 (noting probable cause to arrest leads to a conclusion of no constitutional violation). As demonstrated above, Defendants had both probable cause to arrest Forest and a valid arrest warrant issued by a judicial officer. Simply put, Forest has not shown that there was a constitutional violation and, thus, has no viable cause of action for false arrest under § 1983.

### Forest's § 1983 Claims Based on the Fifth Amendment

Count II of the Complaint alleges additional grounds for § 1983 claims based on violations of the Fifth Amendment's guarantees of procedural and substantive due process. Here, it is really the Fourteenth Amendment that applies and incorporates the Fifth Amendment with regard to state action. With respect to procedural due process, Forest argues a denial of his property interest in continued employment as a tenured teacher without an opportunity to be heard prior to his arrest. Forest also alleges a violation of substantive due process arguing that the officers deprived him of his right to be free from taint in his reputation, good name, honor and integrity. These arguments are unpersuasive.

A plaintiff has a procedural due process claim under § 1983 when the alleged conduct deprived the plaintiff of

his liberty by a distortion and corruption of the legal process, such as falsifying evidence or some other egregious conduct resulting in the denial of a fair trial. *Senra v. Cunningham,* 9 F.3d 168, 173 (1st Cir.1993). The plaintiff must also show no adequate state remedy available to rectify the harm. *Id.; See Reid v. State of New Hampshire,* 56 F.3d 332, 341 (1st Cir.1995)(noting a procedural due process claim may not be redressed under § 1983 where an adequate state remedy exists).

■ This Court concludes that there was no distortion or corruption of the legal process in this case. Forest was arrested following an adequate investigation and based on probable cause. Additionally, Forest has not presented any evidence regarding the inadequacy of state law remedies. On the contrary, the Complaint contains eight counts alleging various state tort claims. Therefore, Forest has no § 1983 claim for a violation of procedural due process.

■ Forest's § 1983 claim based on a denial of substantive due process must also fail. To establish a substantive due process violation, a plaintiff must demonstrate an abuse of government power that "shocks the conscience," or an action that is "legally irrational" in that it is not sufficiently tied to any legitimate state interests. *Collins v. Nuzzo,* 244 F.3d 246, 250 (1st Cir.2001)(quoting *PFZ Properties, Inc. v. Rodriguez,* 928 F.2d 28, 31–32 (1st Cir.1991)). Courts are reluctant to find "conscience shocking" behavior implicating a constitutional violation when the plaintiff was not physically abused, detained, or prosecuted due to racial or political motivation, or otherwise deprived of equal protection of law. *Senra,* 9 F.3d at 173.

■ According to Count II of the Complaint, the substantive due process claim is predicated on the alleged wrongful arrest. However, this is not a sufficient substantive due process violation to support a § 1983 claim. *Albright v. Oliver,* 510 U.S. 266, 274, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)(holding in a § 1983 action, substantive due process affords no relief for an arrest without probable cause). Turning to Forest's claim of a deprivation of his right to be free of taint to his reputation, Forest has failed to present any evidence indicating that the officers were guilty of irrational or conscience shocking behavior. There is no evidence that Forest was physically abused, detained or prosecuted out of racial or political motivation. Accordingly, Forest has no § 1983 claim for violations of substantive or procedural due process.

### Forest's § 1983 Claims Against the City of Pawtucket

■ This Court finds two additional grounds supporting its grant of summary judgment in favor of Defendant, City of Pawtucket. First, any liability the City may have under § 1983 is derivative. *Flowers v. Fiore,* 239 F.Supp.2d 173, 178 (D.R.I.2003). The City is not liable unless its officers violated Forest's constitutional rights. *Id.* As previously noted, the officers did not violate Forest's constitutional rights. Second, municipal liability under § 1983 only attaches when an official or officials responsible for establishing final policy on a certain subject makes a deliberate choice to follow a certain course of action. *Dyson v. City of Pawtucket,* 670 A.2d 233, 238 (1996)(citing *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483–84, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). A court may not find a City liable under § 1983 unless the plaintiff proves the existence of an unconstitutional policy. *St. Louis v. Praprotnik,* 485 U.S. 112, 128, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). Since Plaintiffs have not presented any evidence regarding a relevant policy adopted by the

City of Pawtucket, this Court grants summary judgment for this reason as well.

## C. State Law Claims Against the Pawtucket Defendants

■ This Court has jurisdiction over Plaintiffs' state law claims based on the parties' diversity of citizenship. 28 U.S.C. § 1332(a)(1). Federal courts sitting in diversity must apply the substantive law of the forum state. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Therefore, this Court will resolve the remaining claims against the Pawtucket Defendants by applying Rhode Island law and, where appropriate, persuasive adjudications by courts of sister states and considerations of public policy as identified in state decisional law. *Norton v. Hoyt*, 278. F.Supp.2d 214, 219 (D.R.I.2003).

## Intentional Infliction of Emotional Distress

■ Count III of the Complaint includes a claim for intentional infliction of emotional distress. Specifically, Forest alleges that the Pawtucket Defendants' conduct was extreme and outrageous and caused him to suffer severe emotional distress. This argument is also unpersuasive.

■ Under Rhode Island law, a plaintiff must prove four elements to maintain a cause of action for intentional infliction of emotional distress: 1) the conduct must be intentional or done with reckless disregard for the probability of causing emotional distress; 2) the conduct must be extreme and outrageous; 3) there must be a causal connection between the wrongful conduct and the emotional distress; and 4) the emotional distress suffered must be severe. *Norton*, 278 F.Supp.2d at 220. A plaintiff's failure to prove any one of these elements leads to the claim's demise. *Id.* Liability is only found where the conduct was so outrageous in character and extreme in degree as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community. Restatement (Second) of Torts § 46 cmt. d at 73 (1965). *See Champlin v. Washington Trust Co. of Westerly*, 478 A.2d 985, 989 (R.I.1984)(adopting the standard set forth in Section 46 of the Restatement Second of Torts).

■ The Rhode Island Supreme Court also requires a plaintiff to show physical symptomology in order to recover damages. *Norton*, 278 F.Supp.2d at 220. Plaintiffs must support claims of mental and physical injury with competent expert medical opinion as to origin, existence and causation. *Id.* (citations omitted). Unsupported conclusory assertions of physical injuries are not enough to survive a motion for summary judgment. *Id.*

In this case, Forest has not shown the requisite intentional, extreme, and outrageous conduct causing him to suffer severe emotional distress. The mere fact that the Pawtucket Defendants arrested Forest is not enough to support his claim for emotional distress, since the arrest was supported by probable cause. *Sietins v. Joseph*, 238 F.Supp.2d 366, 380 (D.Mass.2003)(noting that applying for an arrest warrant and making an arrest pursuant to an issued warrant is not utterly intolerable in a civilized community); *Finucane v. Town of Belchertown*, 808 F.Supp. 906, 911 (D.Mass.1992). Furthermore, Plaintiff's complaint relies on unsupported conclusory assertions of physical ills. Forest has not proffered any expert medical opinion regarding the origin, existence, and causation of his alleged physical manifestations. Since there is no evidence to support these essential elements of a claim for intentional infliction of emotional distress, the Pawtucket Defendants are entitled to summary judgment on this claim as well.

## Negligence

In Count IV, Forest alleges that the Pawtucket Defendants were negligent because they breached a duty to conduct a "reasonable, responsible, complete, accurate and/or thorough investigation" of the charges against him. Compl. at para. 74. Under Rhode Island law, Forest must establish: 1) a legally cognizable duty owed to him by the Pawtucket Defendants; 2) a breach of that duty; 3) proximate causation between the Pawtucket Defendants' conduct and his injury; and 4) actual loss or damage. *Mills v. State Sales, Inc.*, 824 A.2d 461, 468 (R.I.2003). Since this Court has concluded that the Pawtucket Defendants conducted an adequate investigation and had probable cause to arrest Forest, there was no breach of duty and summary judgment is appropriate on this count as well. *See Finucane v. Town of Belchertown*, 808 F.Supp. 906, 911 (D.Mass.1992)(granting summary judgment on a state law negligence claim stemming from an alleged false arrest where the police officers had reasonable grounds or probable cause to arrest).

## Malicious Prosecution

Count V of the Complaint states a cause of action for malicious prosecution alleging that the Pawtucket Defendants initiated criminal proceedings against Forest for an improper purpose and without probable cause. To establish the tort of malicious prosecution, a plaintiff must present clear proof that the defendants: 1) initiated a prior criminal proceeding against the plaintiff; 2) without probable cause; 3) maliciously; and 4) the proceeding terminated in the plaintiff's favor. *Rezendes v. Beaudette*, 797 A.2d 474, 478–79 (R.I.2002); *Solitro v. Moffatt*, 523 A.2d 858, 861–62 (R.I.1987). While recognized in Rhode Island, actions for malicious prosecution are traditionally disfavored because of the belief that they deter criminal prosecutions. *Solitro*, 523 A.2d at 862. Therefore, such actions receive stricter scrutiny, including the requirement that the plaintiff establish the elements of malice and lack of probable cause by clear proof. *Id.*

This Court's conclusion that the Pawtucket Defendants had probable cause to arrest Forest negates the second element of a malicious prosecution claim. As such, the Pawtucket Defendants are entitled to judgment as a matter of law on Count V of the Complaint as well.

## Loss of Consortium

Count VI presents a cause of action for loss of consortium. A married person may recover damages for loss of consortium caused by tortious injury to his or her spouse. R.I. Gen. Laws § 9–1–41(a)(2002). Rhode Island law also allows an unemancipated minor to recover damages for the loss of parental society and companionship caused by tortious injury to his or her parent. *Id.* at (b).

The Rhode Island Supreme Court has held that an action for loss of consortium under § 9–1–41 is a derivative claim that is attached to the claims of an injured spouse or parent. *Sama v. Cardi Corp.*, 569 A.2d 432, 433 (R.I.1990). Such action arises from the injured spouse or parent's physical injury and is dependent upon the success of the underlying tort claim. *Id.* Therefore, if a husband or father has no right to recover against a defendant, it follows that a plaintiff wife or child has no such right either. *Id.*

In this case, Plaintiffs, Nancy and Elizabeth Forest allege that the Pawtucket Defendants' actions surrounding Forest's arrest caused them to suffer losses of Forest's consortium, companionship, and society. However, this Court has concluded that Forest has no right to recovery

against the Pawtucket Defendants. Thus, it follows that neither Nancy nor Elizabeth Forest have a right to recover because there is no cause of action upon which to base a derivative claim. Therefore, this Court grants the Pawtucket Defendants' motion for summary judgment on Count VI of the Complaint.

**Punitive Damages**

Finally, Count VII sets forth a claim for punitive damages against all Defendants.[4] Punitive damages are awarded when there is evidence of willfulness, recklessness or wickedness by the party at fault amounting to criminality that should be punished. *Kingstown Mobile Home Park v. Strashnick*, 774 A.2d 847, 859 (R.I. 2001) (citations omitted). The Rhode Island Supreme Court has held that a punitive damages award against a municipality is contrary to public policy. *Graff v. Motta*, 695 A.2d 486, 490 (R.I.1997). A plaintiff may not recover punitive damages without also establishing liability for compensatory or nominal damages. *Kerr–Selgas v. American Airlines, Inc.*, 69 F.3d 1205, 1214 (1st Cir.1995) (citations omitted).

In the instant case, Forest may not recover punitive damages because he has not established that the Pawtucket Defendants are liable for compensatory damages. Therefore, the Pawtucket Defendants are entitled to summary judgment on Forest's punitive damages claim as well.

**IV. Conclusion**

For the foregoing reasons, this Court grants the Pawtucket Defendants' motion for summary judgment as to Counts I through VII of the Complaint. This Court has jurisdiction over the remaining state

law claims against the Montella Defendants because of diversity of citizenship. Since the Montella Defendants have not filed a motion for summary judgment, Counts VII through XI of the Complaint asserted against them remain for disposition. Therefore, no judgment shall enter until all claims are resolved.

It is so ordered.

---

**4.** As previously stated, this Court will only consider the punitive damages claim against the Pawtucket Defendants because the Montella Defendants did not file a motion for summary judgment.